OPINION
{¶ 1} Appellant Homer Wright appeals from a grant of permanent custody by the Stark County Court of Common Pleas, Juvenile Division, in favor of Appellee Stark County Department of Job and Family Services ("SCDJFS"). This appeal is expedited, and is being considered pursuant to App.R. 11.2. The relevant facts leading to this appeal are as follows.
 {¶ 2} The subject child in this matter is Samuel Wright, born in 1999. Samuel's mother, Kinyatta Johnson, has a history of substance abuse and has had prior SCDJFS involvement pertaining to her five other children. Appellant previously signed an affidavit acknowledging paternity of Samuel.[1] On July 31, 2002, SCDJFS filed a complaint alleging Samuel was a dependent and neglected child. Following a shelter care hearing on August 1, 2002, SCDJFS obtained temporary custody. On August 7, 2002, SCDJFS filed an amended complaint, adding as parties to the case Reggie Shephard and an unknown John Doe as alleged fathers.
 {¶ 3} Samuel was temporarily placed with his maternal aunt and uncle, who also have placement or custody of Kinyatta Johnson's five other children. In August 2002, appellant was arrested for unpaid restitution on a 1996 conviction for passing bad checks. Appellant was still in jail as of the dispositional hearing of August 30, 2002; however, transportation was arranged so that he was present for said hearing. Appellant was transferred from the county jail to the Lorain Correctional Facility on September 12, 2002, and from there to the Trumbull Correctional Facility in December 2002. Appellant was released from Trumbull on April 14, 2003, at which time he began residing at Oriana House (located in Summit County), while working at a McDonald's restaurant.
 {¶ 4} A dispositional review hearing was conducted on January 28, 2003, at which time SCDJFS maintained custody and placement was maintained status quo. By the time of the next dispositional review hearing on June 25, 2003, appellant was still at Oriana House. On July 1, 2003, SCDJFS filed a motion for permanent custody. Appellant responded by filing a request for a six-month extension on August 29, 2003. However, following a hearing on September 2, 2003, the trial court granted permanent custody to SCDJFS and denied appellant's motion. A judgment entry with findings of fact and conclusions of law was issued by the court on September 9, 2003.
 {¶ 5} Appellant filed a notice of appeal on October 8, 2003, and herein raises the following four Assignments of Error:
 {¶ 6} "I. The court erred in finding that appellant had abandoned Samuel Wright due to his lack of visitation while incarcerated, thus failing to meet the requirements of R.C.2151.414(B) to justify a grant of permanent custody.
 {¶ 7} "II. The court's decision to grant permanent custody of Samuel Wright to the Department of Job and Family Services was against the manifest weight of the evidence and not in Samuel's best interest.
 {¶ 8} "A. The court erred in finding that the father, Homer Wright, had continuously and repeatedly failed to substantially remedy the conditions causing his son to be placed outside his home, and that the agency made diligent efforts to assist the father to remedy the problems that caused his son to be placed outside of the home.
 {¶ 9} "B. The court erred in finding that the father, Homer Wright, demonstrated a lack of commitment toward his son, Samuel Wright, and that the father had failed to regularly support, visit, or communicate with his son when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for his son.
 {¶ 10} "C. The court erred in finding the father, Homer Wright, is repeatedly incarcerated and the repeated incarceration prevents the father from providing care for his son.
 {¶ 11} "D. The court erred in finding that the father, Homer Wright, is unwilling to provide food, clothing, shelter, and other basic necessities for his son or to prevent his son from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 12} "III. The court erred in finding that it is in the best interest of the minor child, Samuel Wright, to be placed in the permanent custody of the agency, pursuant to R.C.2151.414(D).
 {¶ 13} "IV. The court erred in denying Homer Wright's motion for a first six-month extension of the grant of temporary custody of his son, Samuel Wright, to the stark county Department of Job and Family Services, as there existed a significant likelihood that Samuel could be reunified with his father within the six-month extension period."
 I. {¶ 14} In his First Assignment of Error, appellant argues the trial court erred in finding Samuel abandoned due to the lack of visitation during appellant's period of incarceration. We disagree.
 {¶ 15} In the case sub judice, the trial court made the following pertinent findings:
 {¶ 16} "* * * Mr. Wright has been incarcerated throughout the majority of this case. Mr. Wright was released from prison to the Oriana House in Akron, Ohio, on April 14, 2003. On May 19, 2003, he contacted the SCDJFS to schedule visits with Samuel. Although the recent visits between Samuel and Mr. Wright have gone well and Mr. Wright has been paying child support since being released from prison, Mr. Wright had no contact with Samuel, nor with the SCDJFS, for an extended period of time from December 12, 2002, through at least mid-April, 2003. Mr. Wright clearly had no contact with Samuel for well over 90 days during this period. * * *."
 {¶ 17} R.C. 2151.011(C) reads as follows: "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."
 {¶ 18} This Court has recognized R.C. 2151.011(C) as a bright line test. See In re Allen, Delaware App. No. 02CAF06028, 2002-Ohio-5555. However, the provision also clearly presents a "presumption" of abandonment after the ninety-day period, which a parent may seek to rebut. See In re Cornell, Portage App. No. 2003-P-0054, 2003-Ohio-5007, at f.n. 2.
 {¶ 19} A review of the transcript in the case sub judice provides scant rebuttal of the R.C. 2151.011(C) abandonment presumption. Appellant testified that he did not begin calling SCDJFS to check on Samuel's well-being until approximately one month after he was transferred from Trumbull Correctional to Oriana House, a fact which he attributed to lack of funds for telephone calls. Tr. at 36. Moreover, appellant concedes in his brief that he did not have contact with the child for more than ninety days during his incarceration. Appellant's Brief at 10. However, appellant did make reference to sending a few letters to his attorney to let her know he was "still interested in [his] son." Tr. at 69.
 {¶ 20} We have previously emphasized that in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. Inre Rossantelli Children, Delaware App. No. 01CAF12072, 2002-Ohio-2525, citing Thompson v. Thompson (1987),31 Ohio App.3d 254, 258, and Trickey v. Trickey (1952), 158 Ohio St. 9,13. Upon review of the record, we find the trial court's decision under R.C. 2151.011(C) and 2151.414(B)(1)(b) to be within the parameters of the court's discretion.
 {¶ 21} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 22} In his Second Assignment of Error, appellant contends the trial court's grant of permanent custody was against the manifest weight of the evidence. We disagree.[2]
 {¶ 23} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 24} We note the trial court in the case sub judice made findings and conclusions under R.C. 2151.414(E), which it was not required to do in regard to appellant, as the court did not have to rely on R.C. 2151.414(B)(1)(a), based on the finding of abandonment. See In re Willis, Coshocton App. No. 02CA15, 2002-Ohio-6795, ¶ 30. See, also, In re Starkey (1999),150 Ohio App.3d 612, 617: "Hence, because the agency proved and the court found that the children were abandoned, the court was not required to determine whether the agency used reasonable efforts to reunify or whether the child could not or should not be placed with either parent within a reasonable time."
 {¶ 25} Nonetheless, in the interest of justice, we have reviewed appellants' aforementioned contention in light of the entire record. We conclude the trial court's grant of permanent custody to SCDJFS was not against the manifest weight of the evidence.
 {¶ 26} Appellant's Second Assignment of Error is overruled.
 III., IV. {¶ 27} In his Third and Fourth Assignments of Error, appellant argues the trial court erred in its conclusion that permanent custody is in the best interests of Samuel and in denying appellant's motion to extend temporary custody. We disagree.
 {¶ 28} In determining the best interest of a child in a permanent custody proceeding, a trial court is required to consider all relevant factors, including but not limited to the factors contained in R.C. 2151.414(D). These statutory factors are as follows:
 {¶ 29} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 30} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 31} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 32} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 33} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 34} Appellant's testimony indicated that his acknowledgement of paternity came about as a result of a conversation with Kinyatta one morning, after the child was born, when "she said she would prefer me to be Sammy's father." Tr. at 63. According to appellant, from about two weeks after the child was born, until the time of incarceration, Samuel stayed with him "over 80% of the time." Tr. at 64. Appellant's plan for housing after his release from Oriana House was to move in with his mother. Tr. at 66.
 {¶ 35} The guardian ad litem testified at the hearing and submitted a written report. In addition to expressing concern over the circumstances surrounding the paternity acknowledgement, the G.A.L. recommended permanent custody based on Samuel's bonding in his relative placement and with his siblings. The G.A.L. noted, for example, that the behavior problems Samuel had exhibited at the beginning of the case had "improved tremendously" in his present placement. Furthermore, Shawn Scott, the ongoing caseworker, also noted the level of bonding, and stated his relatives are "very much" interested in adopting him. Tr. at 53.
 {¶ 36} Appellant particularly urges that, under R.C.2151.414(D)(4), he can provide a secure placement for the child, without a permanent custody granting, after his release from Oriana House, which was scheduled to have occurred on September 18, 2003. He argues he likewise has bonded with Samuel, who has referred to him as "daddy," and that he had at least several years of stable work history in food service prior to his arrest. Nonetheless, in light of the entire record in this matter, we hold competent, credible evidence supports the trial court's conclusion that "* * * given the strength of his bond to his foster parents and siblings and the limited interaction between father and son caused by the father's imprisonment, any harm caused by not facilitating that bond is outweighed by the benefits of permanency in the adoptive home." Judgment Entry at 9. Accordingly, we further hold the court did not abuse its discretion in denying appellant's request to extend temporary custody.
 {¶ 37} Appellant's Third and Fourth Assignments of Error are overruled.
 {¶ 38} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is affirmed.
By: Wise, J., Hoffman, P.J., and Farmer, J., concur.
[1] Appellant holds himself out as Samuel's father in this appeal, but we find the record somewhat lacking regarding this issue. It is not clear, for example, whether the paternity "affidavit" was actually effectuated and recorded as per the requirements of R.C. 3111.21, et seq. We also note certain trial court entries variously label appellant either as "father," "alleged father," "presumed father," or "established father." Appellant has further indicated that he is not the child's biological father, despite his aforesaid affidavit. See Tr. at 62, 63. However, appellant's standing as a parent in this case was apparently never formally challenged; hence, we will not further address this issue.
[2] The within appeal does not raise issues directly pertaining to Kinyatta Johnson's involvement in the case plan; therefore, our focus will remain on appellant and the child, and we will presume the regularity of the court's conclusions as to Ms. Johnson.