JOURNAL ENTRY AND OPINION
{¶ 1} Maternal grandmother M.C.[1] and father B.P.[2] appeal[3]
from a juvenile court order granting permanent custody of nine-year-old Th.W, seven-year-old Ty.W., and four-year-old Ta.W. to the Cuyahoga County Department of Children and Family Services. They appeal claiming the decision was against the manifest weight of the evidence and that the court failed to properly serve notice of the permanent custody hearing. We affirm in part, reverse in part and remand.
 {¶ 2} The record reveals that in April 2003, Th.W., Ty.W. and Ta.W. were placed in the emergency temporary custody of the Cuyahoga County Department of Children and Family Services ("CCDCFS"). CCDCFS removed the children from the home of their maternal grandmother and legal custodian, M.C., after it determined that M.C. had left the children at their mother's house where an unsupervised Th.W. lit a M-80 firecracker on the kitchen stove. The firecracker exploded and amputated several of her fingers, requiring emergency medical treatment.
 {¶ 3} Thereafter, in August 2003, CCDCFS filed a complaint for permanent custody alleging neglect and dependency. Following several hearings and pretrials, in July 2004, the children's mother stipulated to the amended complaint and the court proceeded to hold a dispositional hearing. Social worker, Patrina Clarke, child therapist, Kesha McMillian, and the children's maternal grandmother, M.C., testified.
 {¶ 4} The court heard testimony that Th.W. and Ty.W. were removed from their mother's custody in both 1998 and 1999 because of their mother's persistent drug problem and inability to care for the children. When the mother gave birth to Ta.W. in September of 2000, both mother and child tested positive for PCP. Ta.W. and her siblings were immediately removed.
 {¶ 5} Following the children's removal, CCDCFS gave the mother a detailed case plan, which she failed to complete. The children were then placed in the legal custody of their maternal grandmother, M.C., in June 2001. Although the children were residing with her, M.C. allowed their mother to babysit the children.
 {¶ 6} After the firecracker incident, CCDCFS learned that the children were staying with their mother, and all three children were removed from M.C.'s care. Th.W. began therapy sessions with Kesha McMillian and, during a session, Th.W. told her that while living with her mother, she was given alcohol by her mother and aunt, that she observed sexual dancing involving the exchange of money, and that she often served alcohol to guests at these parties. She also claimed that her mother taught her how to steal. Further questioning revealed that the children were encouraged by M.C. and their mother to soil their pants and steal checks from their foster parents' mailboxes to create a disruption.
 {¶ 7} CCDCFS again developed a case plan that included requirements that the mother participate in drug assessments and testings, complete parenting education, and secure both employment and housing. Mother often failed to timely appear for random drug tests, but she did begin a 12- to 16-week parenting program. Her participation in the course was terminated however when she was incarcerated on drug charges and probation violation in July or August 2003. She was again referred to a women's re-entry program following her release, but again failed to follow up with this referral. In addition, mother failed to demonstrate that she had housing or employment.
 {¶ 8} A case plan was also established for M.C. that required her to submit to random urinalysis as CCDCFS had received complaints that she had an alcohol problem that resulted in domestic violence against the children's mother. M.C. claimed she submitted to the testing several times and received clean screens. CCDCFS, however, claimed that M.C. refused to submit to the urine tests, and only appeared once for testing but was turned away because of over-crowding at the testing facility. M.C. refused to reschedule.
 {¶ 9} Testimony was also presented that all three children have different biological fathers, all of whom have established paternity for their respective children. Th.W.'s father remains incarcerated and has not made an appearance in this case, Ty.W.'s father has not made an appearance in this case, and Ta.W.'s father has entered an appearance and now seeks custody of his daughter. However, at the time of trial, all of the fathers were incarcerated.
 {¶ 10} At the end of all of the testimony, the children's guardian ad litem, Melinda Annandale, orally recommended permanent custody to CCDCFS. The court then heard closing arguments, and in August 2004, issued an order granting permanent custody of all three children to CCDCFS. It is from this order that both M.C. and B.P. appeal in the assignments of error set forth in the appendix to this opinion.
 {¶ 11} In M.C.'s sole assignment of error, she claims error in the court's grant of permanent custody to CCDCFS.
 {¶ 12} R.C. 2151.414 sets forth a two-part test for determining whether permanent custody should be granted to an agency. Under this statute, the issue is whether or not "it is in the best interests of the child to permanently terminate parental rights and to grant permanent custody to the agency that filed the motion." (Emphasis added.) M.C., as maternal grandmother to all three children, however, lacks standing to bring such a claim.
 {¶ 13} In order to seek and obtain custody of her grandchildren, M.C. needed to follow the protocol set forth in R.C. 2151.353(A)(3), which states in pertinent part that, "[i]f a child is adjudicated an abused, neglected, or dependent child, the court may * * * [a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child." There is no indication in the record that M.C. filed such a motion, and since she chose not to appropriately request legal custody the trial court was without any authority to grant her custody. "Generally, a party cannot appeal an alleged violation of another party's rights. However, `an appealing party may complain of an error committed against a non-appealing party when the error is prejudicial to the rights of the appellant.'" In re Mourney (April 8, 2003), Athens App. No. 02CA48, 2003-Ohio-1870, quoting In re Smith (1991), 77 Ohio App.3d 1,13.
 {¶ 14} Therefore, since M.C. is not the biological parent to any of the children, and since she failed to file a motion to request legal custody during the course of the proceedings, she is without standing to challenge the juvenile court's award of custody to CCDCFS.
 {¶ 15} M.C.'s sole assignment of error lacks merit.
 {¶ 16} In B.P.'s second assignment of error, he claims that the juvenile court erred in failing to serve him with notice of the permanent custody hearing, violating both the statutory requirements of service and his due process rights.
 {¶ 17} Under R.C. 2151.29, service, "shall be made by delivering a copy to the person * * * notified * * * or by leaving a copy at the person's usual place of residence." B.P. claims that CCDCFS failed to perfect service on him under these requirements despite admitting knowledge of his incarceration.
 {¶ 18} Service of the complaint for permanent custody was attempted on B.P. on August 13, 14, and 15, 2003 at his former address in East Cleveland. All attempts were unsuccessful; however, despite this lack of service, B.P. appeared at a pretrial on October 13, 2003. B.P. did not acknowledge how he became aware of the proceedings. At this pretrial, he received actual notice of a November 18, 2003 hearing. B.P. also signed a "waiver of service summons" and received notice of the next hearing, scheduled for February 3, 2004. B.P. failed to appear for this hearing.
 {¶ 19} Follow up hearings were held on March 23, May 20, and July 6, 2004. The record lacks any indication that service was attempted for any of these hearing dates, and B.P. failed to appear at any of these hearings.
 {¶ 20} At the final dispositional hearing on July 6, 2004, social worker Patrina Clarke testified that paternity had been established and that she had not had contact with any of the fathers since their incarceration, although she admitted to missing two phone calls from one of the fathers.
 {¶ 21} This Court addressed a similar situation in In re F.L. (Mar. 18, 2004), Cuyahoga App. No. 83536, 2004-Ohio-1255. In that case, we held that the juvenile court had personal jurisdiction over a mother because of her appearance at prior hearings. However, we also held that the parent was denied due process when she was not properly notified of the trial. We find In re F.L. persuasive to the instant case.
 {¶ 22} "A termination of parental rights is the family law equivalent of the death penalty in a criminal case. The parties to such an action must be afforded every procedural and substantive protection the law allows." In re Smith (1991), 77 Ohio App.3d 1, 16. The most elementary and fundamental requirement is notice. In re Jones (Nov. 22, 2000), Cuyahoga App. No. 76533. Further, and as we have previously held, due process requires that every party to an action must be afforded "a reasonable opportunity to be heard after a reasonable notice of such hearing." In re Esper, Cuyahoga App. No. 81067, 2002-Ohio-4926, citingOhio Valley Radiology Assoc. Inc. v. Ohio Valley Hosp. Assn. (1986),28 Ohio St.3d 118, 125 and quoting State, ex rel. Allstate Ins. Co. v.Bowen (1936), 130 Ohio St. 347.
 {¶ 23} Due process requires that notice of a trial date in a permanent custody hearing be provided, even if the party has previously appeared for a pretrial. In re D.H., Cuyahoga App. No. 82533, 2003-Ohio-6478. For these reasons, we find B.P.'s second assignment of error to have merit.
 {¶ 24} Based on our determination of B.P.'s second assignment of error, we find his first assignment of error moot.
 {¶ 25} We affirm the juvenile court's award of permanent custody of both Th.W. and Ty.W. to CCDCFS, and reverse the decision as to the custody of Ta.W.
Blackmon, A.J., concurs.
 Calabrese JR., J., Dissents (see separate dissenting opinion).
[1] This Court protects the identity of all parties in juvenile cases.
[2] B.P. is the father of Ta.W. His assignments of error, therefore, only relate to her custody.
[3] Case Numbers 85241 and 85278 were consolidated for purposes of appeal.