JOURNAL ENTRY AND OPINION
{¶ 1} A.Y. (appellant) appeals from the trial court's decision granting permanent custody of his children to Cuyahoga County Department of Children and Family Services (CCDCFS). After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On April 26, 2004, CCDCFS filed a complaint alleging neglect and dependency and requesting custody of appellant's two children, Z.Y., who was two years old at the time, and Y.Y., who was one year old. On July 15, 2004, the children were adjudicated neglected and dependent, and the court awarded temporary custody to CCDCFS. On March 30, 2005, the court held another trial and awarded permanent custody of Z.Y. and Y.Y. to CCDCFS.
 {¶ 3} When the children were removed from the home in November 2003, appellant was incarcerated and awaiting trial. He has subsequently been sentenced to 11 years in prison. The children's mother has a severe chemical dependency problem and is not a party to this appeal.
 II. {¶ 4} Appellant's first and fourth assignments of error will be discussed together, as they are substantially interrelated. In his first assignment of error, appellant argues that "the trial court abused its discretion when it determined that CCDCFS made reasonable efforts to eliminate the continued removal of the child from the child's home or to make it possible for the children to return home and in finding that the CCDCFS made diligent efforts to assist the parents." Appellant's fourth assignment of error reads "the trial court abused its discretion in awarding permanent custody to CCDCFS because the award is against the manifest weight of the evidence and is not supported by clear and convincing evidence."
 {¶ 5} The standard of proof to be used by the trial court when conducting permanent custody proceedings is that of clear and convincing evidence. In considering an award of permanent custody, the court must determine whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to CCDCFS and that the child cannot be placed with either parent within a reasonable time. R.C.2151.414(B). See, also, In re La.B., Cuyahoga App. No. 81981,2003-Ohio-6852.
"Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
Cross v. Ledford (1954), 161 Ohio St. 469, 477.
 {¶ 6} Clear and convincing evidence is a higher standard of proof than that required when we review a manifest weight of the evidence claim. An appellate court will not reverse the judgment of a trial court as being against the manifest weight of the evidence if the judgment is supported by some competent credible evidence going to all the essential elements of the case. C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279.
Placement with parents determination
 {¶ 7} In a permanent custody case in which the children are neither abandoned nor orphaned, the court must decide whether the child cannot or should not be placed with either parent within a reasonable amount of time, as addressed in R.C. 2151.414(B)(1) and (E). Section (E) indicates that "the court shall consider all relevant evidence," and lists 16 factors that the court should apply to the facts of each case. In the instant case, the court made the following findings of fact and conclusions of law pertaining to appellant:
 {¶ 8} As related to R.C. 2151.414(E)(1) — "Following placement of the children outside the children's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home."
 {¶ 9} As related to R.C. 2151.414(E)(4) — "The parent has demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the children."
 {¶ 10} As related to R.C. 2151.414(E)(12) and (13) — "The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the children for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing. The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the children."
 {¶ 11} As related to R.C. 2151.414(E)(14) and (15) — "The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the children or to prevent the children from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect. The parent has committed abuse against the child or caused or allowed the child to suffer neglect and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety."
 {¶ 12} In support of these findings, the record reflects that appellant has an extensive criminal history, with the most recent chapter being his December 11, 2003 conviction for robbery, failure to comply with order-signal, escape, obstructing official business and receiving stolen property. On December 19, 2003, appellant was sentenced to 11 years for these offenses.[1]
Z.Y. and Y.Y. were removed from their home in November 2003; therefore, appellant has been in prison throughout this entire custody proceeding. Additionally, the record reflects that appellant has not communicated with the children since his incarceration.
Best interest determination
 {¶ 13} The second determination in a permanent custody case involves whether granting permanent custody to the agency is in the best interest of the children. This is governed by R.C.2151.414(B) and (D). Section (D) mandates that the court consider the totality of the circumstances, including five enumerated factors. Although the court must consider all five factors, "[o]nly one of these factors needs to be resolved in favor of the award of permanent custody," for the court to terminate parental rights. In re Moore (Aug. 31, 2000), Cuyahoga App. No. 76942.
 {¶ 14} R.C. 2151.414(D)(1) concerns the "interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child." According to the record, appellant could not establish that he had any interaction or relationship with either of his children, who were one and two when they were removed from the home, and appellant went to prison. The social worker from CCDCFS, who was assigned to appellant's case, testified that Z.Y. and Y.Y. did not have a bond with appellant or their mother and that both children immediately started calling her "mom" and calling other male co-workers "dad." Although both the maternal and paternal grandparents had some contact with CCDCFS regarding the children, they were not present at the permanent custody hearing nor did they make a motion for legal custody. In contrast, the record establishes that both children have a strong relationship with their foster mother and are thriving under her care.
 {¶ 15} R.C. 2151.414(E)(2) relates to the wishes of the child. At the time of the hearing in the instant case, Z.Y. was three years old and Y.Y. was two years old. The children's guardian ad litem testified that the children were too young to adequately express their wishes; however, in her opinion, the children's best interests would be served by permanent placement with the agency.
 {¶ 16} R.C. 2151.414(E)(3) concerns the custodial history of the children, including whether they have been in placement for 12 or more months of a consecutive 22-month period. In the instant case, the children were removed from the home in November 2003, and the permanent custody hearing was held on March 30, 2005. During this time, which was longer than 12 months, the children have been living in the same foster home.
 {¶ 17} R.C. 2151.414(E)(4) relates to the "child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." The record establishes that appellant is not able to care for his children because of his repeated and continuous incarceration. As this factor concerns the children's mother, the record reflects that she has a history of criminal behavior, substance abuse and failed treatment, and unstable employment and housing. She did not comply with her case plan in the instant case, and she has two other children that were placed in the permanent custody of CCDCFS and subsequently adopted. Additionally, no one else came forward to obtain legal custody of Z.Y. and Y.Y.
 {¶ 18} R.C. 2151.414(D)(5) refers us back to 2151.414(E)(7)-(11) regarding whether the children can be placed with either parent within a reasonable amount of time. It was established that appellant was incarcerated throughout these proceedings and had no contact with his children from November 2003, when they were removed from the home, through March 30, 2005, the date of the hearing at issue. Furthermore, R.C.2151.011(C) states the following: "[A] child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." See, also, In re Wright,
Stark App. No. 2003CA00347, 2004-Ohio-1094, (holding that the trial court did not abuse its discretion in finding that, pursuant to R.C. 2151.011(C), the child was abandoned due to lack of father's visitation during his period of incarceration, when he conceded in his brief that he did not have contact with the child for more than 90 days). A finding of abandonment supports that a child cannot or should not be placed with either parent within a reasonable time, pursuant to R.C. 2151.414(E)(10).
Reasonable efforts determination
 {¶ 19} In the final argument under appellant's first and fourth assignments of error, he contends that, pursuant to R.C.2151.419(A)(1), the court erred when it determined that CCDCFS made reasonable and/or diligent efforts to prevent removal of the children, to return the children home and to assist appellant. Specifically, appellant argues that the agency did nothing to facilitate visitation with his children; neglected to follow through with appellant's case plan, including whether he even received it; and, did not follow up on his efforts to contact the social worker.
 {¶ 20} Appellant's reliance on R.C. 2151.419(A)(1), however, is misplaced. R.C. 2151.419 "applies only to hearings held pursuant [to] R.C. 2151.28, division (E) of R.C. 2151.31, R.C.2151.314, R.C. 2151.33 or R.C. 2151.353." In re C.N., Cuyahoga App. No. 81813, 2003-Ohio-2048. In the instant case, the motion for permanent custody was filed under R.C. 2151.413; therefore, a reasonable efforts determination is not required. See, also, Inre La.B., Cuyahoga App. No. 81981, 2003-Ohio-6852; In re K.,
Cuyahoga App. No. 83410, 2004-Ohio-4629. In addition, reasonable efforts regarding appellant would have been futile, as reunification of appellant and his children within a reasonable period of time is not a feasible option. See, e.g., In reElliott, Jefferson App. Nos. 03JE30, 03JE33, 2004-Ohio-388; Inre T.K., Wayne App. No. 03CA0006, 2003-Ohio-2634.
 {¶ 21} In summary of appellant's first and fourth assignments of error, we recognize that "termination of parental rights is the family law equivalent of the death penalty in a criminal case. The parties to such an action must be afforded every procedural and substantive protection the law allows." In reSmith (1991), 77 Ohio App.3d 1, 16. However, in the instant case, appellant is not able to take custody of his children because he is incarcerated; the children's mother is not willing to maintain custody, presumably because of her chemical dependency problem; and no one else came forward to fight for custody of Z.Y. and Y.Y.
 {¶ 22} Accordingly, the court did not err when it found that Z.Y. and Y.Y. could not or should not be placed with appellant within a reasonable time and that permanent custody to CCDCFS was in the children's best interest. Furthermore, the court was not required to find that CCDCFS made reasonable efforts to eliminate the removal of the children from the home, to make it possible for the children to return home or to assist appellant. These two assignments of error are overruled.
 III. {¶ 23} In his second assignment of error, appellant argues that "the trial court erred by awarding permanent custody to CCDCFS instead of a suitable member of the children's extended family pursuant to R.C. 2151.412(G)(2)." Specifically, appellant argues that the custody of his children should have been awarded to his mother.
 {¶ 24} R.C. 2151.412 sets out general, discretionary guidelines for the court to consider when reviewing CCDCFS' development of case and reunification plans for each concerned party, and the court is not obligated to follow them. See, e.g.,In re Halstead, Columbiana App. No. 04CO37, 2005-Ohio-403. R.C.2151.412(G)(2) "does not grant any substantive rights to any extended family member concerning the potential placement of a child." In re Harris (Nov. 2, 2000), Cuyahoga App. No. 76631.
 {¶ 25} In In re Th.W., Cuyahoga App. Nos. 85241, 85278,2005-Ohio-2852, we held that, "[i]n order to seek and obtain custody of her grandchildren, [the grandmother] needed to follow the protocol set forth in R.C. 2151.353(A)(3), which states in pertinent part that, `if a child is adjudicated an abused, neglected, or dependent child, the court may * * * award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requestinglegal custody of the child." (Emphasis added.)
 {¶ 26} In the instant case, there is no indication in the record that appellant's mother, or anyone else for that matter, filed such a motion; therefore, the trial court was without authority to grant appellant's mother custody of his two children.
 {¶ 27} Accordingly, appellant's second assignment of error is without merit.
 IV. {¶ 28} In appellant's third assignment of error, he argues that "failure to appoint counsel to represent mother at the permanent custody hearing resulted in an unfair hearing in violation of father's right to due process." Pursuant to R.C.2151.352, a child's parents are "entitled to representation by legal counsel at all stages of the proceedings" in abuse, neglect or dependency cases.
 {¶ 29} In the instant case, appellant was represented by counsel throughout the permanent custody proceedings. At the February 28, 2005 preliminary hearing, the children's mother requested that the court appoint counsel for her. The following colloquy took place regarding the mother's request:
"THE COURT: All right. We'll refer you to the PublicDefender's Office. It will be your responsibility. Contact them.Set up an appointment. Go see them. They will not represent youif you don't. If you come back to the next hearing without anattorney, I will take that as a waiver of your right to berepresented and we will go forward. Understood?
 MOTHER: Understood, sir."
 {¶ 30} At the March 30, 2005 permanent custody hearing, the children's mother attended without an attorney representing her. The following inquiry took place on the record:
"THE COURT: The last time we were here, * * * we referred youto the public defender's office for an attorney. I don't see thepublic defender here. Why did you choose not to go to them?
 MOTHER: Sir, I'm putting my financial life back into place. Iwas unable to make schedules for that.
 THE COURT: Well, I think I made it pretty clear that it wasyour responsibility if you wanted an attorney to contact them andset up an appointment to go see them.
 MOTHER: Yes, sir. You did.
 THE COURT: And you came back today without an attorney. Iwould have to take that as a waiver of your rights to berepresented and we go forward. So we're going to have to dothat.
 MOTHER: Yes, sir."
 {¶ 31} Immediately after determining that the mother waived her right to counsel, the court asked appellant's counsel if there were any preliminary matters to discuss before proceeding with the permanent custody hearing. Appellant's counsel replied, "Nothing, your Honor"; therefore, appellant failed to object to the mother's waiving her right to counsel. Nonetheless, we have recently held that a mother in a permanent custody case "may waive her right to appointed counsel by her conduct. To determine whether a waiver has occurred, the court must take into account the total circumstances of the individual case including the background, experience, and conduct of the defendant." In reS.M., Cuyahoga App. No. 81566, 2004-Ohio-1243 (internal citations omitted). See, also, In re Savanah M., Lucas App. No. L-03-1112, 2003-Ohio-5855, (holding that the court did not err in determining that mother waived her right to counsel when she failed to appear at hearings, had no contact with her appointed attorney, was uncooperative with county services, refused drug treatment and refused psychiatric counseling); In re Moore,153 Ohio App.3d 641, 2003-Ohio-4250, (holding that the court properly allowed a father to proceed without counsel when he was repeatedly told of his right to counsel, he discharged his appointed attorney and stated that he would obtain new counsel but failed to do so).
 {¶ 32} In the instant case, the children's mother stated on the record that she understood her right to counsel and that by appearing without counsel, she waived that right. In addition, she failed to complete her case plan, admitted on the record that she was not yet ready to take responsibility for Z.Y. and Y.Y., and lost permanent custody of two other children prior to the case at hand. We hold that, under the totality of the circumstances, the children's mother voluntarily and knowingly waived her right to be represented by counsel.
 {¶ 33} Although the children's mother is not appealing this waiver, Ohio courts have held that an appellant may allege an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant. See, e.g., In reJones (Nov. 22, 2000), Cuyahoga App. No. 76533; In re JeremyK. (July 27, 2001), Erie App. No. E-11-051.
 {¶ 34} In the instant case, appellant claims the mother's lack of counsel was prejudicial to him because, if she had counsel, she could have effectively cross-examined witnesses and properly submitted evidence. However, appellant, who was represented by counsel and was present at the custody hearing, had the same opportunity to cross-examine witnesses and submit evidence on his behalf. There is simply nothing in the record indicating that had the mother been represented by counsel, the outcome of the hearing would have been different. Appellant's ongoing incarceration is the main reason that he was not awarded custody of his children — the mother's lack of counsel did not prejudice him any further. Accordingly, appellant's final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Rocco, J., concur.
[1] Appellant was incarcerated and awaiting trial for theseoffenses since June 25, 2003.