JOURNAL ENTRY AND OPINION
{¶ 1} Mother, D.W., and Father, B.P., appeal from a juvenile court order granting permanent custody of nearly six-year-old T.W. to the Cuyahoga County Department of Children and Family Services ("CCDCFS").
 {¶ 2} In April 2003, T.W. and two of her siblings were placed in the emergency temporary custody of CCDCFS, who had removed the children from the home of their maternal grandmother and legal custodian after it determined that the grandmother had left the children in Mother's care, and, while unsupervised, one of the children lit an M-80 firecracker on the kitchen stove. The resulting explosion blew off several of the child's fingers.
 {¶ 3} In August 2003, CCDCFS filed a complaint for permanent custody alleging neglect and dependency. The children were subsequently adjudicated neglected, and following a dispositional hearing, were placed in the permanent custody of CCDCFS. The grandmother and Father appealed from this decision. This court affirmed the order of permanent custody regarding the two siblings, and reversed with respect to T.W., because Father had not received proper notice of the dispositional hearing.[1] In re Th.W., Cuyahoga App. Nos. 85241 85278,2005-Ohio-2852. *Page 3 
 {¶ 4} In March 2006, subsequent to remand, T.W. was adjudged neglected and dependent. A dispositional hearing was held on May 25, 2006, after which the trial court committed her to the permanent custody of CCDCFS.
 {¶ 5} Father and Mother filed separate appeals, which were consolidated. Their assignments of error are set forth in the appendix to this opinion. For clarity, we consider the assignments of error out of order.
 {¶ 6} Permanent Custody
 {¶ 7} In her fourth assignment of error, Mother argues that the trial court abused its discretion in awarding permanent custody to CCDCFS because the award is against the manifest weight of the evidence and not supported by clear and convincing evidence.
 {¶ 8} R.C. 2151.414 allows a court to grant permanent custody of a child to the county if it determines at a dispositional hearing, by clear and convincing evidence, first, that the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent, and, second, that permanent custody is in the best interest of the child.
 {¶ 9} Clear and convincing evidence is "that measure or degree of proof which is more than a mere `preponderance of the evidence' but not to the extent of such certainty required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts *Page 4 
sought to be established." In re Awkal (1994), 95 Ohio App.3d 309, fn.2, citing Lansdowne v. Beacon Journal Publishing Co. (1987),32 Ohio St.3d 176, 180-181.
 {¶ 10} In reviewing a trial court's decision in a permanent custody matter, the appellate court affords great deference to the trial court's decision. The trial court is present to observe the parties and gains knowledge which cannot be conveyed in the written record. Trickey v.Trickey (1952), 158 Ohio St. 9, 13. Thus, the trial court's determination in a custody proceeding is subject to reversal only upon a showing of an abuse of discretion. Dailey v. Dailey (1945),146 Ohio St. 93. An abuse of discretion requires an arbitrary, capricious, or unreasonable decision. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
A. Placement With Either Parent
 {¶ 11} The trial court's determination of whether the child cannot or should not be placed with either parent within a reasonable period of time is guided by R.C. 2151.414(E). That section sets forth sixteen factors the court may consider in its determination. It provides that if the trial court finds by clear and convincing evidence that any of the sixteen provisions exists, the court must enter a finding that the child cannot or should not be placed with either parent within a reasonable period of time. Pertinent to this case are the following factors:
 {¶ 12} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist *Page 5 
the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 13} "* * *
 {¶ 14} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so
 {¶ 15} "* * *
 {¶ 16} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 17} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody of the dispositional hearing. *Page 6 
 {¶ 18} "* * *
 {¶ 19} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child * * *."
 {¶ 20} The trial court determined that T.W. cannot and should not be placed with either parent because both Mother and Father had demonstrated a lack of commitment to T.W. by failing to regularly support, visit or communicate with her when able to do so; both Mother and Father demonstrated an unwillingness to provide an adequate permanent home for her; Mother's parental rights were terminated with respect to two siblings of T.W.; and Father will be incarcerated for the next 16 years and, therefore, is unable to care for T.W. The record supports the trial court's findings.
 {¶ 21} First, there is no question that Mother's parental rights were involuntarily terminated with respect to T.W.'s siblings. This court affirmed that award of permanent custody in June 2005. In re Th.W., Cuyahoga App. Nos. 85241 85278, 2005-Ohio-2852. In addition, there is also no question that Father was incarcerated at the time of the dispositional hearing, and will not be available to care for T.W. for at least 16 years.[2] Moreover, there is no question that Mother and Father failed to regularly support, visit, or communicate with T.W. and that they demonstrated an *Page 7 
unwillingness to provide an adequate permanent home for her. Mother acknowledged her failure to visit T.W. between July 6, 2004 and the dispositional hearing on May 25, 2006, a period of nearly two years. Likewise, the social worker testified that Father had not seen or communicated with T.W. since July 2004. Accordingly, the trial court did not err in finding that T.W. cannot and should not be placed with either Father or Mother within a reasonable period of time.
 {¶ 22} Father and Mother contend, however, that the trial court erred in finding that CCDCFS made reasonable efforts to reunify T.W. with either of them. As set forth above, pursuant to R.C. 2151.414(E), before determining that a child cannot or should not be placed with either parent within a reasonable period of time, the trial court must determine that CCDCFS made "reasonable case planning and diligent efforts" to assist the parents in remedying the problems that led to the removal of the child.
 {¶ 23} Father and Mother first argue that on May 10, 2006, Magistrate Strunk conducted a hearing at which he determined that CCDCFS had made "reasonable efforts" to reunite T.W. with her parents, but this hearing violated their due process rights because they were not advised of the hearing. Their argument is without merit. The May 10, 2006 hearing was a hearing to finalize a permanency plan, specifically, adoption, for T.W.'s two siblings. The magistrate's decision regarding the hearing specifically notes that the "reasonable efforts" determination applied *Page 8 
"except as to T[W.]" The decision noted further that T.W.'s case "was appealed and remanded." Because the hearing was about T.W.'s siblings, for whom permanent custody had been granted to CCDCFS, and not T.W., the trial court did not err in overruling Father's and Mother's objections to the hearing.
 {¶ 24} Father also complains, in his second assignment of error, that the trial court erred in determining that CCDCFS had made reasonable efforts to reunite T.W. with her parents because CCDCFS failed to: 1) file a new case plan upon remand of the case from this court; 2) place T.W. in a less restrictive placement, despite finding an appropriate relative; 3) develop any case plan for the legal custodian (i.e., maternal grandmother); 4) offer services to Mother upon remand; 5) initiate an out-of-state investigation of Mother's new home; 6) refer Mother to parenting classes; 7) offer any services to Father upon remand; and 8) set up any visitation by the parents with T.W.
 {¶ 25} Mother likewise contends in her second assignment of error that CCDCFS did not make reasonable efforts to reunite her with T.W. because it neither filed a case plan nor contacted her after remand.
 {¶ 26} The record clearly reflects that, from the beginning of the case, Mother had a case plan which included such services as drug assessment and testing, parenting education, and securing employment and housing. Mother failed to complete any of the objectives on the case plan, however, despite the Agency's *Page 9 
referrals. Although Mother testified that she lived in Cleveland with her mother until February 22, 2006, when she moved to Pennsylvania, she failed to explain why she did not work on the case plan or visit T.W. between June 9, 2005 (when the trial court's decision regarding T.W. was reversed) and February 22, 2006, when she moved. Further, the record indicates that Mother kept her whereabouts secreted from CCDCFS and Juvenile Court for over two years, forcing CCDCFS to continually attempt to locate her through her mother. Accordingly, Mother cannot now blame CCDCFS for her failure to visit or communicate with T.W. or to complete a single case plan objective. Finally, although Mother contends that she had housing and employment in Pittsburgh as of the May 25, 2006 hearing, she offered no evidence, such as copies of a lease or a pay stub, to substantiate either claim. Her failure to do so, despite the fact that employment and stable housing had been on her case plan since the beginning of the case, speaks volumes about her lack of commitment to preservation of her parental rights.
 {¶ 27} With respect to Father, we note that Father was incarcerated at the time of the dispositional hearing on May 25, 2006. Although CCDCFS had made a referral for him to take a parenting class (the only case plan related service available at the correctional institution where he was housed), Father had yet to enroll in the class at the time of the hearing. In addition, as of May 25, 2006, Father had not *Page 10 
requested a visit or communicated with T.W. since prior to the first permanent custody hearing in July 2004 (nearly two years).
 {¶ 28} With respect to Father's argument that CCDCFS failed to place T.W. in a less restrictive placement, despite finding an "appropriate placement," the record reflects that, with the exception of the maternal grandmother's motion for legal custody, no other person came forward to express an interest in gaining custody of T.W.[3] None of the relatives referred by the parents were acceptable placements nor did they express an interest in pursuing custody of T.W. The record demonstrates that the relative referred to by Father as an "appropriate placement" did not have sufficient income to provide for T.W. Furthermore, T.W. had no personal relationship with any of the relatives referred by the parents.
 {¶ 29} Finally, we reject Father's argument that CCDCFS should have developed a case plan for the maternal grandmother. There is no requirement that a children's services agency pursue relative placement before a trial court may properly grant permanent custody. In reShaefer, 2006-Ohio-5513, at ¶ 63.
 {¶ 30} In light of the evidence in the record, the trial court did not err in determining that notwithstanding reasonable efforts by CCDCFS to reunite T.W. with her parents, T.W. cannot and should not be placed with either parent within a reasonable time. *Page 11 
B. Best Interest Determination {¶ 31} R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: 1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; 2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; 3) the custodial history of the child; 4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and 5) whether any of the factors in R.C. 2151.414(E)(7) to (11) are applicable.
 {¶ 32} The statute requires a weighing of all the relevant factors and one factor is not given greater weight than the others. In reShaefer, supra. Not all the factors need to be present for the court to find that permanent custody is in the best interest of the child. In reShaeffer Children (1993), 85 Ohio App.3d 683, 692. Further, "this court has stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody." In re C.H., Cuyahoga App. Nos. 82258 82852, 2003-Ohio-6854, at [34. (Citations omitted). *Page 12 
 {¶ 33} The record in this case reveals sufficient competent, credible evidence to support a finding that permanent custody was in T.W.'s best interest. At the time of the hearing, T.W. was nearly six years old and had been in the Agency's custody her entire life. She was in a specialized foster home and in therapy for ADHD, PTSD, and behavioral problems. The foster parent wishes to adopt T.W. should the opportunity arise.
 {¶ 34} Neither Father nor Mother has established a bond with T.W., nor does she have a relationship with any maternal or paternal relatives. Father was incarcerated at the time of the hearing; Mother had not completed any of the objectives of her case plan. No individuals came forward to request custody of T.W. and no motions for legal custody were filed aside from the motion filed by the maternal grandmother, who, despite the prior court findings of parental unfitness regarding Mother and having been "specifically admonished [by the Juvenile Court] from allowing the children to be in the care and control of the mother," let the children live with Mother until the unfortunate incident with the M-80 firecracker. In light of this evidence, the trial court did not err in finding that an order of permanent custody was in T.W.'s best interests.
 {¶ 35} Both Father and Mother argue, however, that the trial court erred in making this determination because it failed to consider T.W.'s interests as expressed directly by her. Specifically, in their first assignments of error, Father and Mother *Page 13 
each contend that the trial court erred in denying Mother's motion for an in camera interview of T.W. They note that the guardian ad litem admitted that she did not ask T.W. where she wanted to live and there was no showing that an in camera interview would have been detrimental to T.W., nor any evidence that she did not want to testify.
 {¶ 36} We agree that the statute requires that the child's wishes be either expressed directly or through the guardian ad litem. On the facts of this case, however, we find no error in the trial court's denial of Mother's motion for an in camera interview. The guardian ad litem testified that T.W. lacked sufficient maturity to meaningfully express her wishes as to her own best interest. In addition, an in camera interview with T.W. regarding whether she wanted to live with Mother or Father would have been meaningless under these circumstances. Mother's testimony in which she acknowledged that she had not visited or maintained contact with T.W. for nearly two years was a tacit admission that she had abandoned the child, thereby precluding T.W. from being placed with her. R.C. 2151.414(E)(11). Further, because Father will be incarcerated for the next 16 years, the trial court obviously could not place T.W. with him. Thus, under these circumstances, where, regardless of the child's expressions, reunification with either parent was barred, an in camera interview would have accomplished nothing except to discourage an already disheartened child. *Page 14 
 {¶ 37} Finally, in their third assignments of error, both Father and Mother contend that the trial court erred in overruling Mother's objection to the guardian ad litem's submission of an untimely report. The dispositional hearing was held on May 25, 2006; the guardian ad litem filed her report on May 22, 2006.
 {¶ 38} R.C. 2151.414(C) provides that "[a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing * * *." However, Loc.R. 20 of the Court of Common Pleas, Juvenile Division, requires that guardian ad litem to filed his or her report "at least one (1) week prior to an evidentiary court hearing." Thus, Father and Mother contend that the trial court erred in accepting the guardian ad litem's untimely report.
 {¶ 39} "We find this argument to be without merit as courts are to be given latitude in following their own local rules; the enforcement of rules of court is held to be within the sound discretion of the court."Ciokajlo v. Ciokajlo (July 28, 1982), Hamilton App. No. C-810158, citingHanes v. Black (1945), 78 Ohio App. 394; Myers v. Duibley (1952),94 Ohio App. 228.
 {¶ 40} The trial court did not err in awarding permanent custody of T.W. to CCDCFS. Appellants' arguments to the contrary are without merit.
 {¶ 41} Appellant's first, second, and third assignments of error in Case No. 88360 are overruled. *Page 15 
 {¶ 42} Appellant's first, second, third, and fourth assignments of error in Case No. 88424 are overruled.
Affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and, MARY EILEEN KILBANE, J., CONCUR. *Page 16 
 APPENDIX
FATHER'S ASSIGNMENTS OF ERROR (CASE NO. 88360): 1. The court failed to discuss the wishes of the child, failed to properly consider the statutory requirements regarding best interest and abused its discretion by failing to hold an in camera interview.
 2. The court abused its discretion in finding CCDCFS made reasonable efforts to reunify.
 3. The trial court erred in overruling counsel's objections to the failure to timely file the guardian ad litem report.
MOTHER'S ASSIGNMENTS OF ERROR (CASE NO. 88424): 1. The trial court abused its discretion by denying appellant's motion for an in camera inspection of the child where there was no evidence that such interview would be detrimental to the child and there is no evidence that the child did not wish to testify.
 2. The trial court erred by overruling appellant's objection to the magistrate's finding that CCDCFS made reasonable efforts to reunify where appellant did not receive notice of the hearing and CCDCFS failed to file an appropriate case plan following remand.
 3. The trial court erred by overruling appellant's objection to the guardian ad litem's untimely report.
 4. The trial court abused its discretion in awarding permanent custody to CCDCFS because the award is against the manifest weight of the evidence and is not supported by clear and convincing evidence.
[1] All of the siblings have different fathers, so the lack of notice affected Father's rights only with respect to T.W.
[2] On May 5, 2006, Father was sentenced by the Cuyahoga County Common Pleas Court to 16 years incarceration for felonious assault and failure to comply with an order of a police officer, each with a firearm specification, and having a weapon while under a disability. State v.Pruitt, Case No. CR-474921.
[3] Significantly, maternal grandmother, who had not visited T.W. since July 2004, failed to appear at the May 25, 2006 hearing. *Page 1