JOURNAL ENTRY and OPINION
{¶ 1} Appellant, K.C. ("appellant"), appeals the juvenile court's award of permanent custody of his two children to the Cuyahoga County Department of Children and Family Services ("CCDCFS").
 {¶ 2} In November 2000, B.R. and D.R., were removed from the care of appellant and the children's mother, S.R., after a domestic violence dispute occurred in the home. B.R. was injured as a result of the dispute. The day after the children were removed, CCDCFS filed a complaint alleging that the children were abused, neglected and dependent and requested temporary custody of the children be awarded to CCDCFS. The juvenile court first ordered that the children be committed to the pre-dispositional temporary custody of CCDCFS and after the children were adjudicated abused, neglected and dependent, the juvenile court ordered that the children be committed to the temporary custody of CCDCFS.
 {¶ 3} The original case plan established by CCDCFS pursued reunification of the children with their parents and required S.R. to attend and complete domestic violence counseling, submit to a drug assessment and, if needed, attend and complete drug treatment. S.R. was also required to attend and complete parent education classes and establish stable housing. Although S.R. completed her domestic violence counseling, she hardly benefitted from it because she was involved in a second domestic violence dispute with appellant. The drug assessment rendered S.R. alcohol dependent and, as part of her treatment, she was required to attend Alcoholics Anonymous meetings and submit to random urine tests. S.R.'s attendance at the meetings was sporadic and she only submitted to a few of the random urine tests. S.R. completed the parenting education classes, but she failed to provide to CCDCFS adequate proof of where she lived or that she was no longer living with appellant.
 {¶ 4} Likewise, the case plan required appellant to attend and complete domestic violence counseling and attend and complete drug treatment. When the case plan was first instituted, appellant was incarcerated for domestic violence and felonious assault. Upon his release, appellant attended the Responsible Fatherhood Institute and he was scheduled to attend a domestic violence program. However, appellant failed to complete those programs because he was incarcerated again for domestic violence.
 {¶ 5} While in prison, appellant wrote a letter to his children, in which he expressed his wish to hug, kiss, and roll around on the ground with them. This portion of the letter was described as "inappropriate" by the consulting psychologist because of allegations in the past that appellant had sexually abused B.R. In that same letter, appellant asked B.R. to tell her mother to let him out of jail so that he could be with his children. According to one of the caseworkers, B.R. was upset after she read the letter.
 {¶ 6} Appellant was referred to the Adapt program, which was another domestic violence counseling program, upon his release from prison the second time. Appellant also received a drug assessment and was referred to drug treatment for alcohol. However, appellant did not complete any of the domestic violence programs, nor did he complete his drug treatment.
 {¶ 7} Although CCDCFS scheduled visitation between the parents and the two children, it was changed to once a month for each parent to visit separately because the parents argued with each other when they visited together and made threats to one another. When the case was transferred to the second caseworker in 2003, appellant's visitation with the children was terminated because B.R. appeared nervous and upset after the visits with her father. After appellant's visitation was cancelled, appellant failed to contact CCDCFS in any fashion, failed to appear at semiannual reviews, and failed to provide CCDCFS documentation that he completed drug treatment or domestic violence counseling. Although S.R. appeared at the semiannual reviews, she refused to provide CCDCFS where she lived, gave excuses for why she would not submit to random urine samples, and stated that the two children were better off with foster parents than any place where appellant could get them. Because of the parents' failure to fulfill the case plan, CCDCFS filed a motion to modify the temporary custody to permanent custody.
 {¶ 8} The consulting psychologist, who interviewed the parents and the children after CCDCFS filed for permanent custody, recommended against reunification because he opined that the children would be at a significant risk of further neglect and abuse if they were returned to either parent. His recommendation was based on S.R.'s major depression, alcohol dependence disorder, and deficient parenting skills by treating the children in a peer-like manner. His recommendation was also based on appellant's bipolar disorder, deficient parenting abilities by paying little attention to his son and treating his daughter like an adult, his relationship with his daughter which had inappropriate aspects, and allegations of sexual abuse in the past.
 {¶ 9} After a hearing on CCDCFS' motion to modify temporary custody to permanent custody, the juvenile court found that the "parents have demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so, or by actions showing an unwillingness to provide an adequate permanent home for the children." In so finding, the juvenile court terminated CCDCFS' temporary custody and awarded permanent custody of the children to CCDCFS. Appellant now appeals.
 {¶ 10} For his first assignment of error, appellant contends that the juvenile court erred when it granted the motion for permanent custody. In particular, appellant argues that CCDCFS failed to make a good faith effort to reunify appellant with his children and that the juvenile court failed to consider the statutory requirements for permanent custody. However, upon review of the record, appellant's argument is without merit.
 {¶ 11} R.C. 2151.414 provides in pertinent part:
 {¶ 12} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 13} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 14} "(b) The child is abandoned.
 {¶ 15} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 16} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 17} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 18} If one of the factors in R.C. 2151.414(B)(1)(a)-(d) applies, the trial court must determine by clear and convincing evidence that permanent custody is in the best interest of the child by considering all relevant factors, including those listed in R.C. 2151.414(D). Those factors include:
 {¶ 19} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 20} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 21} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 22} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 23} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 24} Here, the juvenile court first determined, pursuant to R.C. 2151.414(B)(1)(d), that the two children have been in CCDCFS' custody for 35 months at the time of trial, which is 12 or more months of a consecutive 22 month period and, pursuant to R.C. 2151.414(B)(1)(a), that the children cannot now or in the foreseeable future be reunited with either parent.[1] In making the unnecessary determination that the children cannot be reunited with either parent, the juvenile court found that despite the reasonable and numerous efforts by CCDCFS to remedy the conditions that caused the children to be placed outside the home, the parents, because of their repeated failure to complete the necessary programs, have failed to benefit from the services and have not reduced the risk of harm to the children. See R.C.2151.414(E)(1) (one of the bases to find that the children cannot be placed with either parent is to consider the parent's continuous and repeated failure to substantially remedy the conditions causing the child to be placed outside the home.)
 {¶ 25} The juvenile court also determined that permanent custody to CCDCFS would be in the best interests of the children because they have been in the custody of their current foster home, together, for almost three years, which is 12 or more months in a consecutive 22 month period pursuant to R.C.2151.414(D)(3). There was also evidence, pursuant to R.C.2151.414(D)(1), that appellant minimally interacted with his son, his relationship with his daughter had inappropriate aspects to it, and that appellant's visitation was cancelled with his children because B.R. became nervous and upset during the visits. In stark contrast to appellant's interactions with his children, the foster parents with whom the two children had been in custody since July 2001 indicated that they were interested in providing the children with a permanent home and there was no evidence of any complaints while in their care.
 {¶ 26} Likewise, pursuant to R.C. 2151.414(D)(4), the trial court found that the children were in need of a legally secure placement, which could not be achieved without a grant of permanent custody to CCDCFS. Here, S.R. refused to provide CCDCFS her address and even informed CCDCFS that she felt the children should stay with their foster parents so that appellant could not get to them. In addition, neither S.R. nor appellant completed the numerous programs offered to them by CCDCFS, which evidences an unwillingness to remedy the situation which caused the children to be removed from the home in the first instance.
 {¶ 27} The juvenile court adhered to the statutory requirements of R.C. 2151.414(B) and (D) when it awarded permanent custody of the two children to CCDCFS. Because the juvenile court did not abuse its discretion in awarding CCDCFS permanent custody of the children, appellant's first assignment of error is overruled.
 {¶ 28} For his second assignment of error, appellant contends that the trial court erred by failing to order the children to be placed in a planned permanent living arrangement instead of awarding CCDCFS permanent custody of the children. Appellant's contention, however, lacks merit.
 {¶ 29} R.C. 2151.415 provides in pertinent part:
 {¶ 30} "(C)(1) If an agency pursuant to division (A) of this section requests the court to place a child into a planned permanent living arrangement, the agency shall present evidence to indicate why a planned permanent living arrangement is appropriate for the child, including, but not limited to, evidence that the agency has tried or considered all other possible dispositions for the child. A court shall not place a child in a planned permanent living arrangement, unless it finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:
 {¶ 31} "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
 {¶ 32} "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative;
 {¶ 33} "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing for independent living."
 {¶ 34} If a court, upon hearing a motion requesting permanent custody of a child, decides to deny the motion, the court may proceed in accordance with R.C. 2151.415 and make any disposition listed in that statute, including a planned permanent living arrangement. In re Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 76603, citing In re McDaniel (Feb. 11, 1993), Adams App. No. 92 CA 539. Here, unlike in Campbell, the juvenile court granted CCDCFS' motion and awarded permanent custody of the children to CCDCFS because of the clear and convincing evidence that the children had been in CCDCFS' custody for 12 or more months in a consecutive 22 month period and that permanent custody would be in the best interests of the children. Although the original case plan pursued reunification, the parents' repeated failure to complete the programs, address and remedy their problems, and show a commitment and willingness to their children eviscerated such reunification. As a result, CCDCFS sought permanent custody, not a planned permanent living arrangement.
 {¶ 35} Moreover, none of the factors in R.C. 2151.415(C)(1) apply. Despite the fact that B.R. is ADHD and D.R. was diagnosed with possible fetal alcohol syndrome, there was no evidence that either child could not function in a family-like setting, as stated in R.C. 2151.415(C)(1)(a). There was also no evidence, pursuant to R.C. 2151.415(C)(1)(b), that either child had a positive or significant relationship with their parents. Finally, as required in R.C. 2151.415(C)(1)(c), both children are younger than 16 years of age.
 {¶ 36} Because none of the requirements for a planned permanent living arrangement existed, the juvenile court did not err when it granted CCDCFS' motion and awarded permanent custody of the children to CCDCFS. Thus, appellant's second assignment of error is overruled and the decision of the juvenile court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court — Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and Sweeney, J., concur.
[1] This court held in In re: C.N., Cuyahoga App. No. 81813, 2003-Ohio-2048, ¶ 22, that when a child is in the temporary custody of a children services agency for 12 months of a consecutive 22 month period, the court no longer needs to determine whether the child can be placed with either parent within a reasonable time. "When this factor exists, * * * it obviates a determination required by R.C. 2151.414(E) of whether the parent has remedied the conditions which caused the removal of the children." In re: C.N., 2003-Ohio-2048, at ¶ 22.