Before: Blackmon, P. J., Stewart, J., and Dyke, J. *Page 2 
{¶ 1} In this consolidated appeal, appellants R.A. (father) and CM. (mother) appeal the juvenile court order terminating their parental rights and granting permanent custody of their child, S.A., to the Cuyahoga County Department of Children and Family Services (CCDCFS). R.A. and CM. assign the following errors for our review:
 "The trial court violated [R.A.'s] state and federal due process rights by terminating his parental rights to S.A. when the decision was against the manifest weight of the evidence."[1]
 "II. The juvenile court erred when it granted CCDCFS' motion for permanent custody and committed the minor child to the permanent custody of CCDCFS against the manifest weight of the evidence."[2]
 {¶ 2} Having reviewed the record and pertinent law, we affirm the juvenile court's decision. The apposite facts follow.
 {¶ 3} R. A. and CM. are the natural parents of S.A., born May 17, 2004. CM. conceived and gave birth to S.A. during her marriage to T.M.[3] On May 13, 2005, CCDCFS removed S.A. from the care of her mother. On that same date, CCDCFS filed a complaint in juvenile court alleging neglect, and requested a disposition of temporary custody.
 {¶ 4} The complaint specifically alleged that both mother and biological father admitted that they had substance abuse problems involving alcohol and cocaine. *Page 3 
The complaint alleged that the father had pending criminal charges for driving under the influence (DUI) and drug possession. The complaint also alleged that the mother had been diagnosed with a bipolar disorder, and she admitted that, in the past, she had not taken her medication as prescribed. In addition, the complaint alleged she had been previously referred to a drug and alcohol treatment program, but the mother continued to use drugs while in the program. The complaint further alleged that both mother and father have engaged in domestic disputes while S.A. was in their care. Finally, the complaint alleged that the mother previously had two other children removed from her care and committed to the custody of CCDCFS.
 {¶ 5} On May 16, 2005, the trial court granted CCDCFS emergency temporary custody of S.A. On July 21, 2005, an adjudicatory hearing was held and CCDCFS moved for temporary custody of S.A. The mother, father, their respective attorneys, the CCDCFS social worker, and the child's guardian ad litem were all in attendance. At the hearing, the parents admitted to the allegations in the complaint, the trial court found the allegations to be true, and adjudicated S.A. to be a neglected child. The trial court granted temporary custody of S.A. to CCDCFS.
 {¶ 6} CCDCFS established a case plan to pursue reunification of S.A. with her parents. The case plan required CM. to attend and complete domestic violence counseling, because she had been convicted of aggravated assault for stabbing her former husband, T.M., and because domestic violence was a frequent occurrence between CM. and R.A. *Page 4 
 {¶ 7} The case plan also required CM. to attend and complete a drug treatment program, and to submit to a drug assessment. In addition, the case plan required CM. to obtain emotional stability through medication and psychological counseling.
 {¶ 8} Likewise, the case plan required R.A. to attend and complete domestic violence counseling. In addition, the case plan required R.A., who had an extensive criminal history, which included convictions for drug related offenses, to attend and complete substance treatment and abuse counseling.
 {¶ 9} On October 19, 2006, seventeen months after S.A. was removed from her parents' care, CCDCFS filed a motion requesting that the court modify its previous order granting the agency temporary custody of S.A. to permanent custody. On April 16, 2007, CM. filed a motion for legal custody of S.A. to be granted to Roberta Ann, S.A.'s paternal grandmother. On May 16, 2007, Roberta Ann filed a motion to intervene and a motion for legal custody of S.A. The trial court denied both motions requesting legal custody be granted to the paternal grandmother.
 {¶ 10} On May 17, 2007, the trial court conducted a hearing on CCDCFS's motion requesting permanent custody of S.A.
 {¶ 11} At the hearing, Dawn Bates, Kinship Navigator with Geauga County Department of Job and Family Services, testified that she conducted a suitability study of Roberta Ann's home for potential placement of S.A. Bates testified that she had difficulty getting answers from Ms. Ann regarding her home, employment, and relationships. For example, during the home study Ms. Ann indicated that only she *Page 5 
and her boyfriend, Mr. Albrecht, lived in the home, but when Albrecht was interviewed, he indicated that Ms. Ann's son and his girlfriend, along with their three children lived in the home.
 {¶ 12} Bates also testified that Ms. Ann refused to give her access to the entire home, specifically the three bedrooms upstairs. Bates testified that Ms. Ann refused access to the rooms claiming, at one juncture, that there were dogs in the room, and, at another time, that the rooms were filled with toys. Bates testified that Ms. Ann indicated that there was a firearm in the house, but when asked where it was kept, Ms. Ann indicated that it had been sold.
 {¶ 13} Bates further testified that she was unable to obtain a clear picture of Ms. Ann's finances. Ms. Ann indicated that she worked approximately thirty-two hours per week and had an annual salary of only $7,000. When Bates questioned Ms. Ann about the inconsistency between the hours worked per week and the annual salary, Ms. Ann then indicated that her employment was seasonal, and that she worked a side job throughout the year.
 {¶ 14} Finally, Bates testified that she recommended that S.A. not be placed with Ms. Ann. Bates stated that Ms. Ann could not articulate a plan to care for S.A. on a long term basis. Ms. Ann also was unaware of S.A.'s health problems, in particular S.A.'s asthmatic condition. Bates testified that despite Ms. Ann's clear affection for S.A., she lacked the capacity to adequately care for S.A.
 {¶ 15} Shindana Jackson, a social worker with CCDCFS, testified that the agency removed S.A. from her parents' care due to chronic substance abuse *Page 6 
problems and ongoing acts of domestic violence. Jackson testified that neither parent had satisfactorily completed the case plan established to effect reunification with S.A. Jackson stated that CM. failed to attend all sessions of an eight-week domestic violence counseling program. Jackson also stated that CM. continued to abuse cocaine while enrolled in a substance abuse outpatient treatment program.
 {¶ 16} Jackson testified that R. A.'s case plan required him to complete domestic violence and substance abuse classes. Jackson stated that CCDCFS referred R.A. to an anger management program, which R.A. completed with a positive report. R.A. participated and completed an outpatient drug and alcohol treatment program through Catholic Charities. However, Jackson testified that in March 2007, R.A. relapsed and tested positive for cocaine use.
 {¶ 17} Finally, Jackson testified that she recommended against reunification because of R.A.'s extensive criminal history, his unresolved substance abuse and domestic violence issues. Jackson stated that R.A. was unemployed and lacked stable housing. In addition, R. A. was living with a woman who has six children, all of whom have been removed from her custody, and her parental rights were terminated with respect to one.
 {¶ 18} Ms. Ann, age sixty five at the time of trial, testified that she indicated to CCDCFS that she wanted custody of S.A. in the event the natural parents were not recommended for custody. Ms. Ann testified that she currently receives Social Security benefits and works a variety of jobs including, as a tax account during tax season. Ms. Ann admitted that at the home evaluation visit, she thought Ms. Bates *Page 7 
was asking too many questions and was only interested in where she was hiding her other grandchildren.[4] Ms. Ann further stated that she refused to show Ms. Bates the upstairs, because she had not finished painting S.A.'s bedroom.
 {¶ 19} S.A.'s guardian ad litem testified that the family visits between S.A. and her natural family had gone well. However, the guardian ad litem recommended against placing S.A. with the natural parents or with the paternal grandmother, because of their inability to provide full time care for S.A. The guardian ad litem further testified that S.A. was in a stable home, being cared for by excellent foster parents, who are desirous of adopting her.
 {¶ 20} The consulting psychologist, Dr. Sylvester Smarty, who conducted a psychological evaluation of CM., recommended against reunification because he opined that CM. is currently incapable of taking care of S.A. on her own. Dr. Smarty's recommendation was based on C.M.'s struggle with addiction. Dr. Smarty's recommendation was also based on C.M.'s bipolar disorder and her history of medication non-compliance. Dr. Smarty also opined that CM. had few skills and low potential to generate extra income to supplement her monthly disability income. Dr. Smarty's report related that C.M.'s parental rights had been terminated with respect to two other children. Finally, Dr. Smarty opined that C.M.'s inability to control her anger could potentially place S.A. at the risk of harm if reunited. *Page 8 
 {¶ 21} After a hearing on CCDCFS' motion to modify temporary custody to permanent custody, the juvenile court found that S.A. could not be placed with either parent within a reasonable time, and should not be placed with either parent. In so finding, the juvenile court terminated CCDCFS' temporary custody and awarded permanent custody of S.A. to CCDCFS.
 Failure to Award Permanent Custody to Natural Parents {¶ 22} We will address both assigned errors together, because they encompass similar propositions of fact and law. In this consolidated appeal, both CM. and R.A. argue that the juvenile court's order granting permanent custody of S.A. to CCDCFS was against the manifest weight of the evidence. We disagree.
 {¶ 23} Our review of a custody determination by the juvenile court begins with the recognition that the court's exercise of discretion should be accorded "the utmost respect,"[5] taking into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record."[6] "A court exercising Juvenile Court jurisdiction
is invested with very broad discretion, and, unless that power is abused, a reviewing *Page 9 
court is not warranted in disturbing its judgment."[7]
 {¶ 24} R.C. 2151.414 provides in pertinent part as follows:
 "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 "(b) The child is abandoned.
 "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 25} In the instant case, the record reveals that S.A. was removed from the home on May 13, 2005, and placed in the temporary custody of CCDCFS, who *Page 10 
subsequently filed a motion to modify temporary custody seventeen months later. At the time of the trial, on May 17, 2007, S.A. had been in the temporary custody of CCDCFS for twenty-four consecutive months. Thus, the evidence at trial conclusively supports the court's finding, pursuant to R.C. 2151.414(B)(1)(d), that S.A. has been in the temporary custody of CCDCFS for "twelve or more months of a consecutive twenty-two month period."
 {¶ 26} We have previously held that when a child is in the temporary custody of a children services agency for 12 months of a consecutive 22-month period, the court no longer needs to determine whether the child can be placed with either parent within a reasonable time.[8]
When this factor exists, it obviates a determination required by R.C.2151.414(E) of whether the parent has remedied the conditions which caused the removal of the child.[9]
 {¶ 27} If one of the factors in R.C. 2151.414(B)(1)(a)-(d) applies, the trial court must determine by clear and convincing evidence that permanent custody is in the best interest of the child by considering all relevant factors, including those listed in R.C. 2151.414(D).[10]
Those factors include:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; *Page 11 
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. R.C. 2151.414(D)."
 {¶ 28} We have consistently held, in connection with R.C. 2151.414(D), that only one of these enumerated factors needs to be resolved in favor of an award of permanent custody.[11] Here, our review of the record indicates that in its best interest determination, the court emphasized the custodial history of S.A., which revealed that S.A. had been in CCDCFS' custody for twenty-four months at the time of trial, which is 12 or more months of a consecutive 22 month period and, pursuant to R.C.2151.414(B)(1)(a), that she could not then, or in the foreseeable future, be reunited with either parent.
 {¶ 29} In making the unnecessary determination that S.A. could not be reunited with either parent, the juvenile court found that despite the reasonable and *Page 12 
numerous efforts by CCDCFS to remedy the conditions that caused S.A. to be placed outside the home, the parents, because of their repeated failure to complete the necessary programs, have failed to benefit from the services and have not reduced the risk of harm to S.A. One of the bases to find that a child cannot be placed with either parent is to consider the parent's continuous and repeated failure to substantially remedy the conditions that caused the child to be placed outside the home.[12]
 {¶ 30} The juvenile court found that C.M.'s mental illness, and both parents' chemical dependency are so severe that it renders them incapable of providing an adequate home for S.A. The juvenile court also found that both CM. and R.A. have placed S.A. at substantial risk of harm due to their alcohol and drug abuse. In addition, the juvenile court found that CM. has had parental rights terminated with respect to two other children, ages eight and ten who were adopted after being in the custody of CCDCFS.
 {¶ 31} The record reflects competent and credible evidence which supports the juvenile court's determination that permanent custody is in the best interest of S.A. As we must accord the court the utmost deference in a permanent custody analysis, we conclude the juvenile court did not abuse its discretion in this determination. Accordingly, we overrule both assigned errors. *Page 13 
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., and ANN DYKE, J., CONCUR
[1] R.A.'s assigned error.
[2] C.M.'s assigned error.
[3] T.M. was dismissed as a party after R.A. was shown to be the biological father by genetic testing.
[4] Tr. at 183-185.
[5] See In re Campbell (Oct. 12, 2000), Cuyahoga App. Nos. 77552 and 77603, citing Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124; see, also, In re Awkal (1994), 95 Ohio App.3d 309, 316.
[6] Campbell, citing Goll.
[7] In re Pieper Children (1993), 85 Ohio App.3d 318, 330.
[8] In re: C.N., Cuyahoga App. No. 81813, 2003-Ohio-2048.
[9] Id.
[10] In re B.R., Cuyahoga App. No. 83674, 2004-Ohio-3865.
[11] In re Moore (August 31, 2000), Cuyahoga App. No. 76942, citingIn re Shaeffer Children (1993), 85 Ohio App.3d 683; see, also, In reM.Z., Cuyahoga App. No. 80799, 2002-Ohio-6634; In Re Legg, Cuyahoga App. Nos. 80542 and 80543, 2002-Ohio-4582.
[12] In re Z.Y., Cuyahoga App. No. 86293, 2006-Ohio-300. See also R.C.2151.414(E)(1). *Page 1