[Cite as *In re D.V.*, 2023-Ohio-238.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: D.V. | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
|  | : | Hon. John W. Wise, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 2022CA00109 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
Common Pleas, Case No. 2020JCV01315

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      January 26, 2023

APPEARANCES:

For - Appellee                        For - Appellant

BRANDON J. WALTENBAUGH           PAUL M. GRANT
Stark County JFS                           209 S. Main Street, 8th Floor
402 2nd Street S.E.                       Akron, OH 44038
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant-mother R.M. ["Mother"] appeals the August 10, 2022 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division that terminated her parental rights with respect to her minor child D.V., and granted permanent custody of the child to appellee, Stark County Department of Jobs and Family Services (hereinafter "SCJFS").

*Facts and Procedural History*

{¶2} R.M. is the biological mother of D.V. (b. 08.09.2020). The biological father of D.V. is deceased. T. at 5. On December 28, 2020, SCJFS filed a complaint alleging abuse, neglect, and dependency and seeking temporary custody of the child. T. at 5. By Judgment Entry filed March 22, 2021, D.V. was found to be abused by adjudication and temporary custody was granted to the SCJFS.

{¶3} On June 17, 2021, the trial court reviewed the case. The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and ordered status quo.

{¶4} On November 19, 2021, the trial court reviewed the case. The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, and ordered status quo. The trial court also extended the child to the temporary custody of SCJFS for an additional six months.

{¶5} On May 17, 2022, the trial court again reviewed the case. The trial court approved and adopted the case plan, found that SCJFS had made reasonable efforts to finalize the permanency planning in effect, SCJFS had utilized intensive efforts to identify and engage appropriate and willing kinship caregivers for the child, and ordered status

quo. The trial court further found that no compelling reasons existed to preclude a request for permanent custody.

{¶6} On May 19, 2022, SCJFS filed a motion seeking permanent custody of the child.

{¶7} On July 20, 2022, Mother filed a motion to change legal custody of the child to the placement caregivers of the child.[1]

{¶8} On August 9, 2022, the trial court heard evidence on the motion requesting permanent custody of the child and the motion to change legal custody to the placement caregivers.

{¶9} Caseworker Heather Grimes testified that the original concerns in the case were Mother's history with SCJFS, Mother's drug use, the child being born positive for cocaine and spending time in the NICU for withdrawal, and Mother's not engaging in case plan services.

{¶10} Ms. Grimes testified D.V. uses a thickener for trouble swallowing, he has tubes in his ears for ear infections, and goes to speech therapy. The agency attempted to work with Mother on an in-home Safety Plan. T. at 7. In December 2020, Mother took D.V. from the person that was providing the safety plan. SCJFS was unable to get in touch with Mother; therefore, SCJFS contacted the police.

{¶11} Mother's case plan was to complete a substance abuse assessment, follow the resulting recommendations, maintain sobriety, and engage in mental health treatment. Mother attempted to engage in substance abuse treatment multiple times but was unsuccessful. Ms. Grimes testified that Mother was continually unsuccessfully

---

[1] The placement caregivers are the paternal aunt and uncle who were present in the courtroom during the permanent custody hearing. T. at 57.

discharged from treatment. Ms. Grimes testified that all of Mother's drug screens for SCJFS were positive for drugs, including cocaine, amphetamines, methamphetamines, benzodiazepines, fentanyl, and buprenorphine.

{¶12} Mother did not successfully engage in mental health treatment. Ms. Grimes testified that Mother was diagnosed with major depressive disorder but was not consistent with attending appointments.

{¶13} Mother was incarcerated at least four times during the case. Mother's criminality caused concern for her ability to care for a child. Ms. Grimes testified that Mother had an active warrant for not completing community service.

{¶14} After the Agency took custody of D.V., it arranged a first visit with D.V. that Mother missed. Mother consistently came late to the supervised visits after the first missed visit. Around February 25, 2021, Mother had one face to face visit with D.V. at the Agency. Mother's last contact in person with D.V. was in February 2021. Ms. Grimes stated that Mother could have visited with D.V. in person between February and August of 2021 and she did not.

{¶15} D.V. was in a foster home when the Agency first took temporary custody and prior to moving to New York. In August of 2021, D.V. was moved to the paternal aunt and uncle in New York. The paternal relatives are located about 4 to 6 hours away. These paternal relatives in New York were found through Family Search and Engagement.

{¶16} After D.V. was placed in New York in August 2021, visits were supervised over Zoom. Mother did this for about a month and then Grimes lost contact with Mother from October to November of 2021. Zoom visits with D.V. resumed in June of 2022.

Grimes did not speak with Mother again until after she was in CommQuest in August or September of 2022 and then visits were supervised over Zoom. Mother went to CommQuest around this time and started conducting Zoom supervised visits for a period of about six weeks. Grimes would meet with Mother and her counselor at CommQuest weekly to discuss Mother's progress and any concerns, then Grimes would facilitate a Teams visitation in a different room for visitation. The last three visits that were scheduled, Mother did not show for the Zoom visitation. Ms. Grimes stated she would send out the meeting notice the day before for visitation, however Mother was given the dates before that day.

{¶17} Ms. Grimes testified that Mother routinely went several months without contacting SCJFS. Ms. Grimes attempted to reach out to Mother by going to her home, sending letters, and making telephone calls. Ms. Grimes attempted to help Mother complete her case plan by helping her contact agencies, meeting with her, trying to support her sobriety, and discussing the importance of the services with her.

{¶18} Mother had lost custody of two other children. T. at 8. Ms. Grimes testified that the paternal aunt and uncle are interested in adopting D.V. T. at 50. D.V. is bonded with them and they are meeting the child's needs. T. at 50-51. The agency had no concerns with the child being placed there. T. at 58.

{¶19} On August 10, 2022, the trial court issued its findings of fact granting permanent custody of the child to SCJFS, denying Mother's motion to change legal custody of the child to the paternal uncle and aunt, and terminating the parental rights of Mother. Specifically, the trial court found that, despite reasonable efforts by SCJFS, the child could not and should not be placed with Mother within a reasonable amount of time,

the child had been in the temporary custody of SCJFS for 12 or more months in a consecutive 22-month period, Mother had abandoned the child, and the grant of permanent custody was in the child's best interest.

*Assignments of Error*

{¶20} "I.   THE TRIAL COURT'S DECISION TO TERMINATE PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} "II.   THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT-MOTHER'S MOTION FOR LEGAL CUSTODY WHERE THE AGENCY FAILED TO USE REASONABLE EFFORTS TO REUNITE APPELLANT MOTHER AND HER MINOR CHILD."

**Standard of Appellate Review**

{¶22}   "[T]he right to raise a child is an 'essential' and 'basic' civil right."   *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169(1990), *quoting Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551(1972).   A parent's interest in the care, custody and management of his or her child is "fundamental."   Id.; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599(1982).   The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case."   *In re Smith,* 77 Ohio App.3d 1, 16, 601 N.E.2d 45(6th Dist. 1991).   Therefore, parents "must be afforded every procedural and substantive protection the law allows."   Id. An award of permanent custody must be based upon clear and convincing evidence.   R.C. 2151.414(B)(1).

{¶23} The Ohio Supreme Court has delineated our standard of review as follows, "clear and convincing evidence" is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23 (1986). In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954), the Supreme Court further cautioned,

> The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added). A court of appeals will affirm the trial court's findings "if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a

termination of parental rights have been established." *In re Adkins,* 5th Dist. Nos. 2005AP06–0044 and 2005AP07–0049, 2006-Ohio-431, 2006 WL 242557, ¶17.

### Requirements for Permanent Custody Awards

{¶24} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶25} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

(b) the child is abandoned;

(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶26} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**Temporary Custody for at least 12 out of a consecutive 22-month period**

**R.C. 2151.414(B) (1) (d)**

{¶27} The "12 of 22" provisions set forth in R.C. 2151.413(D)(1) and R.C. 2151.414(B)(1)(d) balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child. *In re C.W.,* 104 Ohio St.3d 163, 2004–Ohio–6411, 818 N.E.2d 1176, ¶22. Through the "12 of 22" provisions in the permanent-custody statutes, the legislature provides parents with 12

months to work toward reunification before an agency can institute a permanent-custody action asserting R.C. 2151.414(B)(1)(d) grounds.  Id.

{¶28}  "Before a public children-services agency or private child-placing agency can move for permanent custody of a child on R.C. 2151.414(B) (1) (d) grounds, the child must have been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period."  *In re: C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176 at paragraph one of the syllabus.  When calculating this time period, the Court in *C.W.* cautioned, "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)."  Id. at 167, 2004-Ohio-6411, 818 N.E.2d at 1180, ¶26.

{¶29}  R.C. 2151.414(B)(1)(e) states that, "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

{¶30}  D.V. was removed from Mother's home December 23, 2020. T. at 5. Pursuant to R.C. 2151.414(B)(1)(e) sixty days from December 23, 2020 would be Sunday, February 21, 2021.  The juvenile court adjudicated D.V. an abused child by Judgment Entry filed March 22, 2021.

{¶31}  Accordingly, the "earlier date" that D.V. will be deemed to have enter the temporary custody of SCJFS for purposes of R.C. 2151.414(B)(1)(d) is February 21, 2021.  SCJFS filed the Motion for Permanent custody on May 19, 2022, 2 years, 2 months and 28 days after D.V. is considered to have entered the temporary custody of SCJFS.

**{¶32}** Accordingly, the trial court correctly found that D.V. had been in the temporary custody of SCJFS for over twelve months of a consecutive 22-month period.

**{¶33}** As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

**{¶34}** Because Mother has not challenged the twelve of twenty-two-month finding as to the child, we would not need to address the merits of Mother's assignments of error. However, even if we consider Mother's arguments the trial court did not err in determining the child cannot be placed with Mother at this time or within a reasonable period of time.

### Abandonment – R.C. 2151.414(B)(1)(b)

**{¶35}** In the case at bar, the trial court found, by clear and convincing evidence, that Mother abandoned the child pursuant to R.C. 2151.414(B)(1)(b). Specifically, the trial court found that Mother had no contact with the child from February 2021 until August 2021. Mother, again, had no contact with the child from November 2021 until May 2022. Therefore, the trial court concluded Mother has abandoned the child by failing to visit or maintain contact with the child for more than ninety days.

**{¶36}** Pursuant to R.C. 2151.011(C), a child is "presumed abandoned when the parties of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶37}  Competent, credible evidence supports the trial court's findings. In the case at bar, Ms. Grimes testified that Mother went long periods of time without visiting the child throughout the case. T. at 16-18. Ms. Grimes testified that Mother had no contact with the child from February of 2021 to September of 2021. T. at 16-17. Ms. Grimes testified that Mother also had no contact with the child from October of 2021 to May of 2022. T. at 18-19.  Incarceration does not rebut the presumption of abandonment. *See In re K. W.,* 12th Dist. Butler Nos.  CA2003-11-289, CA2003-11-291, 2004-Ohio-5406, ¶ 42; *In re Wright*, 5th Dist. Stark No. 2003 CA 00347, 2004-Ohio-1094, ¶18.

{¶38} Accordingly, we find no reversible error in the court's finding of abandonment under R.C. 2151.414(B)(1)(b), and the court's decision in regard to grounds for permanent custody was not against the manifest weight of the evidence.

{¶39}  A trial court's finding of abandonment under R.C. 2151.414(B)(1)(b) will satisfy the first prong of the permanent custody test, independent of a finding under R.C. 2151.414(B)(1)(a) [Parental Placement within a Reasonable Time], allowing the court to move on to the second prong of considering whether the grant of permanent custody to the agency is in the best interest of the child. *In re A.M.,* 5th Dist. Stark No. 2013 CA 00113, 2013-Ohio-4152.

### Parental Placement within a Reasonable Time– R.C. 2151.414(B)(1)(a)

{¶40}   The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents.  R.C. 2151.414(E).  The statute also indicates that if the court makes a finding under R.C. 2151.414(E)(1)-(15), the court shall determine the children cannot or should not be placed with the parent.  A trial court may base its decision that a child cannot be

placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors.  The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time.  *See In re William S.*, 75 Ohio St.3d 95, 1996–Ohio–182, 661 N.E.2d 738; *In re Hurlow*, 4th Dist. Gallia No. 98 CA 6, 1997 WL 701328 (Sept. 21, 1998); *In re Butcher,* 4th Dist. Athens No. 1470, 1991 WL 62145(Apr. 10, 1991).

**{¶41}**   R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents.  Specifically, Section (E) provides, in pertinent part, as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency

to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

**{¶42}**  As set forth above, the trial court's findings are based upon competent credible evidence.  The record includes the recommendation of the guardian ad litem for the child, and the testimony of the witnesses at trial.  The trial judge was in the best position to determine the credibility of the witnesses.

**{¶43}**  The juvenile court found that SCJFS had made reasonable efforts to prevent the removal, to eliminate the continued removal, or to make it possible for D.V. to return home safely to Mother's home.

**{¶44}**  The record supports the juvenile court's finding that Mother has not shown consistent sustained progress to have the child returned to her custody.  She continues to suffer with illegal drug abuse.   It does not appear that Mother has been able to apply any behavioral changes that she has attempted to learn.  Despite offering numerous services, Mother was unable or unwilling to mitigate the concerns that led to the child's removal.

As set forth in our *Statement of the Facts and Case, supra*, we find there was sufficient and substantial competent evidence Mother failed to remedy the problems which initially caused the removal of D.V. from her home.

**{¶45}** A parent's successful completion of the terms of a case plan is not dispositive on the issue of reunification. The ultimate question under R.C. 2151.414(A)(1) is whether the parent has substantially remedied the conditions that caused the child's removal. *In re Shchigelski*, 11th Dist. Geauga No. 99–G–2241, 2000 WL 1568388 (Oct. 20, 2000); *In re McKenzie*, 9th Dist. Wayne No. 95CA0015, 1995 WL 608285(Oct. 18, 1995). A parent can successfully complete the terms of a case plan yet not substantially remedy the conditions that caused the children to be removed—the case plan is simply a means to a goal, but not the goal itself. Hence, the courts have held that the successful completion of case plan requirements does not preclude a grant of permanent custody to a social services agency. *In re J.L.,* 8th Dist. No. 84368, 2004–Ohio–6024, ¶ 20; *In re Mraz*, 12th Dist. Nos. CA2002–05–011, CA2002–07–014, 2002–Ohio–7278. In the case of *In re: Summerfield*, 5th Dist. Stark No. 2005CA00139, 2005-Ohio-5523, this Court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.

**{¶46}** The evidence demonstrated the very little successful efforts Mother had made on the case plan. On that point, the evidence demonstrates that any improvement that Mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that Mother is not able to be a successful parent to the child.

**{¶47}**  We find there is competent and credible evidence to support the trial court's determination that D.V. cannot be placed with Mother within a reasonable time or should not be placed with Mother.

### Reasonable Efforts

**{¶48}**  Mother further contends the finding that SCJFS made reasonable efforts to reunify the child with Mother is against the manifest weight of the evidence.

**{¶49}**  The Supreme Court of Ohio in *In re C.F.*, 113 Ohio St.3d 73, 78, 862 N.E.2d 816, 821(2007) noted,

> [N]o one section of the Revised Code addresses the concept of reasonable efforts.  Overall, Ohio's child-welfare laws are designed to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.'  R.C. 2151. 01(A).  To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.  For example, R.C. 2151. 412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal 'to eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.'  Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151. 413(D) - the '12 months out of 22 rule'- '[i]f reasonable efforts to return the child to the child's home are required under section 2151.419' and the agency has not provided the services required by the case plan.

{¶50} A "reasonable effort" is "* * * an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." *In re Weaver*, 79 Ohio App.3d 59, 63, 606 N.E.2d 1011(12th Dist. 1992). The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In re J.D.*, 3rd Dist. Hancock Nos. 5-10-34, 2011-Ohio-1458. The child's health and safety is paramount in determining whether reasonable efforts were made. *In re R.P.*, 5th Dist. Tuscarawas No. 2011-Ohio-5378.

{¶51} R.C. 2151.419 requires the trial court to determine whether the agency filing the complaint for custody "has made reasonable efforts * * * to eliminate the continued removal of the child from his home, or to make it possible for the child to return home." Subsection (B)(1) mandates the trial court to issue written findings of fact setting forth the reasonable efforts made by the agency, including a brief description of "the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from his home or enable the child to return home."

{¶52} However, even where a trial court has failed to include in its judgment entry, the findings contemplated by R.C. 2151.419(B)(1) we have found that the ultimate issue is the reasonableness of the Department's efforts, and have concluded those efforts may be determined from the record. *In the matter of Kell/Bess Children*, 5th Dist. No. 97CA0278, 1998 WL 401767(Mar. 23, 1998); *Hunt v. Ickes*, 5th Dist. Tuscarawas No. 2014 AP 08 0032, 2015-Ohio-309, ¶19.

{¶53} We find there is competent and credible evidence to support the trial court's determination that SCJFS efforts were reasonable and diligent under the circumstances

of the case. We find that the record supports that SCJFS was working toward the goal of reunification. We find no evidence of dishonest purpose, conscious wrongdoing, or breach of duty on the part of SCJFS.

**{¶54}** Having reviewed the record, we find that SCJFS made a good faith effort to reunify Mother and her child. Furthermore, the record contains clear and convincing evidence to support the court's determination that the child could not be placed with Mother.

### The Best Interest of the Child

**{¶55}** An agency that seeks permanent custody of a child bears the burden of proving by clear and convincing evidence that the grant of permanent custody is in the child's best interest. *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 26.

**{¶56}** R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) apply.

**{¶57}** The factors in R.C. 2151.414(E)(7) through (11), which are referred to in R.C. 2151.414(D)(1)(e), involve a parent's having been convicted of or pleaded guilty to specific criminal offenses against the child, the child's sibling or another child who lived in the parent's household; a parent's withholding medical treatment or food from the child;

a parent's repeatedly placing the child at substantial risk of harm because of alcohol or drug abuse; a parent's abandoning the child; and a parent's having had parental rights as to the child's sibling involuntarily terminated.

{¶58} No one element is given greater weight or heightened significance. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. R.C. 2151.414(D)(1) does not require a juvenile court to make specific findings regarding each best-interest factor listed in R.C. 2151.414(D)(1) or to include in its decision or judgment entry a written discussion of each of those factors. *In re: A.M.,* 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶33.

{¶59} A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶60} Mother had her parental rights terminated with respect to two other children. In the case at bar, the grandparents who have custody of Mother's oldest children declined to accept custody of D.V. T. at 41; 48. D.V. has been living with the paternal aunt and uncle since August 2021. T. at 28; 49. The relatives are interested in adopting D.V. T. at 50. Although the trial court overruled Mother's motion to change legal custody,

nothing prevents the paternal aunt and uncle from seeking to adopt D.V. T. at 58-62. SCJFS intends to place D.V. with the relatives for adoption. T. at 62.

**{¶61}** Finally, the Guardian ad Litem recommended that the permanent custody of the child be granted to the Agency.

**{¶62}** In short, the juvenile court's judgment entry demonstrates that the court satisfied its statutory duty to consider the best interest factors set out in R.C. 2151.414(D)(1)(a) through (e).

### Conclusion

**{¶63}** For these reasons, we find that the trial court's determination that Mother had failed to remedy the issues that caused the initial removal and therefore D.V. could not be placed with her within a reasonable time or should not be placed with her was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶64}** We further find that the trial court's determination that Mother had abandoned D.V. was based upon competent credible evidence and is not against the manifest weight or sufficiency of the evidence.

**{¶65}** We further find the trial court correctly found that D.V. had been in the temporary custody of the SCJFS for over twelve months of a consecutive 22-month period.

**{¶66}** Finally, we further find that the trial court's decision that permanent custody to SCJFS was in D.V.'s best interest was based upon competent, credible evidence and is not against the manifest weight or sufficiency of the evidence.

{¶67} Because the evidence in the record supports the trial court's judgment, we overrule Appellant-Mother's two assignments of error, and affirm the decision of the Stark County Court of Common Pleas, Family Court Division.


By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur