[Cite as *In re S.P.*, 2023-Ohio-1208.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF S.P. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| | : | |
| | : | |
| | : | Case No. 2022CA00139 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas Family Court Division, Case
No. 2021JCV00408

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     April 11, 2023

APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

BRANDON J. WALTENBAUGH          PAUL M. GRANT
402 2nd Street SE                          209 S. Main Street
Canton, OH  44708                          8th Floor

Akron, OH 44038

*King, J.*

{¶ 1}   Appellant Father appeals the September 29, 2022 judgment entry of the Stark County Court of Common Pleas Family Court Division terminating his parental rights and granting permanent custody of his child S.P. to the Stark County Department of Job and Family Services (SCJFS).

Facts and Procedural History

{¶ 2}   J.P. is the father ("Father") of S.P. who was born December 16, 2020. SCJFS became involved with the family shortly thereafter due to concerns involving drug use by both parents, active warrants for both parents, Mother J.B.'s history with social service agencies involving the removal of three other children from her custody, and Mother's poorly-managed epilepsy.

{¶ 3}   SCJFS initially attempted to put a safety plan in place which included using maternal grandmother as a safety plan monitor. However, Mother, Father, and Grandmother all tested positive for methamphetamines. As a result, an emergency shelter care hearing was held on February 2, 2021 wherein the trial court found probable cause for the involvement of SCJFS, that SCJFS had made reasonable efforts to prevent the removal of S.P. from the home, and that S.P.'s continued residence with parents was not within S.P.'s best interests.  The trial court granted temporary custody of S.P. to the SCJFS. Neither Mother nor Father attended the hearing.

{¶ 4}   On April 30, 2021, Father appeared for the first time and requested counsel. Due to statutory time constraints, the complaint was dismissed and refiled the same day.

The concerns outlined in the initial complaint were identical to those outlined in the refiled complaint. S.P. remained in the temporary custody of SCJFS.

{¶ 5}  On May 3, 2021, a second emergency shelter care hearing was held with the same concerns and results as the first. The trial court found SCJFS had made reasonable efforts to prevent the removal of S.P. from the home. S.P. was continued in the temporary custody of SCJFS.

{¶ 6}  On May 26, 2021, an adjudicatory hearing was held. The trial court set the matter for evidence on July 8, 2021.

{¶ 7}  On July 8, 2021, S.P. was adjudicated dependent. On the same day, a case plan for parents was approved and adopted. The plan required both parents to complete a parenting assessment, substance abuse treatment, and follow through with all treatment recommendations. The trial court found SCJFS had made reasonable efforts to finalize permanency planning and compelling reasons existed to preclude a filing for permanent custody. The court further found both parents were using drugs, both had active warrants for their arrest, and neither were cooperating with non-court services.

{¶ 8}  Both Mother and Father completed their parenting assessments with Dr. Aimee Thomas. Dr. Thomas' concerns for Father's ability to safely parent S.P. included his criminal activity and substance abuse, both of which had been concerns for Father since the age of 10 or 11. Thomas also found Father's "unstable and immature" lifestyle concerning for safe parenting.

{¶ 9}  Thomas recommended Father engage in weekly aftercare classes, twelve-step meetings, maintain sobriety, find a sober sponsor, cooperate with random drug

screens, engage in individual counseling, and successfully complete home-based parenting classes.

{¶ 10} Thomas recommended Mother also engage in weekly aftercare classes, twelve-step meetings, maintain sobriety, cooperate with random drug screens, and engage in individual counseling. Additionally, Mother was to engage with a neurologist to stabilize her seizure disorder. Because Mother has a full-scale IQ of 77 she required a structured approach to parenting-skill training with more repetition. For that reason, the Goodwill Parenting program was specifically recommended for Mother.

{¶ 11} Both Mother and Father were required to demonstrate nine months of sobriety before reunification with S.P.

{¶ 12} On July 22, 2021 the court reviewed the case plan, found SCJFS had made reasonable efforts to prevent the removal of S.P. from the home, and ordered status quo.

{¶ 13} On November 30 2021, SCJFS filed a motion to extend temporary custody for six months. Parents had moved to a different county and needed time to locate and utilize providers relevant to their case plan.

{¶ 14} On December 28, 2021 the trial court reviewed the matter, approved and adopted the case plan, and found SCJFS had made reasonable efforts to finalize the permanency planning, had made intensive efforts to identify and engage kinship caregivers for S.P. and ordered status quo. The motion to extend temporary custody was set for evidence on January 27, 2022. The court found Father had been discharged from substance abuse treatment due to positive drug screens and non-compliance. The court further found Mother was not engaged in substance abuse treatment and neither parent was engaged in individual counseling.

{¶ 15} On January 27, 2022, Parents stipulated to the motion to extend temporary custody and the trial court granted the same. The trial court that SCJFS had made reasonable efforts, and ordered SCJFS to begin seeking permanency for S.P.

{¶ 16} On June 21, 2022, SCJFS filed a motion for permanent custody of S.P. The motion alleged in part that S.P. could not be placed with Parents within a reasonable amount of time, that S.P. had been in the continuous custody of SCJFS for 12 or more months in a consecutive 22-month period, and that permanent custody was within S.P.'s best interests.

{¶ 17} On June 28, 2022, the trial court reviewed the matter, found reasonable efforts by SCJFS to finalize permanency planning, engage willing kinship caregivers for S.P., ordered status quo, and found there were no compelling reasons to preclude a request for permanent custody. The trial court specifically found Parents had failed to follow through with mental health counseling, had not completed substance abuse treatment, had refused drug testing since December 2021, and struggled with both stable housing and consistency during visits with S.P. Parents were staying with family members or in hotels. At the time of the review they were staying with Father's aunt in Pennsylvania.

{¶ 18} On September 19, 2022, the assigned Guardian Ad Litem (GAL) filed her final report. In it the GAL noted her concerns surrounding Parents ability to safely parent S.P. and recommended the trial court grant SCJFS's motion for permanent custody.

{¶ 19} The permanent custody hearing was held on September 28, 2022. SCJFS caseworker Nicole Hadden was assigned to this case. She testified she became involved in the matter nearly two years before the hearing due to concerns including drug use by both parents, active warrants for both parents, Mother's extensive history of losing

custody of other children, and both parents failing to cooperate with non-court case plan services. Hadden testified the initial complaint had been filed on February 2, 2021 and that S.P. had been in the continuous temporary custody of the SCJFS since that date.

{¶ 20} Hadden described the case plan for Mother and Father. She stated while Father was on probation, he initially complied with substance abuse treatment, but as soon as he was released from probation he stopped participating. As of the date of the hearing, Father had not participated in substance abuse treatment for nine months. Father further failed to engage in twelve-step meetings, find a sober sponsor, or engage in home-based parenting classes. Father had failed to comply with random drug testing since December of 2021 when he tested positive for methamphetamine and buprenorphine. He struggled with stable housing and employment throughout the case.

{¶ 21} Hadden testified that Parents moved to a different county and failed to complete most of the requirements of their case plan. They did complete the Triple P parenting program in Mahoning County. Hadden attempted to secure drug testing for parents when they moved out of county, and offered screening on the multiple occasions they came to Stark County to visit S.P. but parents still failed to comply. Mother failed to comply with substance abuse counseling and refused multiple drug screens. She tested positive for methamphetamines in November and December of 2021 and refused testing thereafter. Mother further failed to complete Goodwill Parenting classes and made no progress in individual counseling. Mother was incarcerated for a portion of the life of this matter. She participated in the Triple P parenting programming while incarcerated.

{¶ 22} Hadden testified that despite reasonable efforts by SCJFS parents failed to successfully complete their case plan services. She therefore believed there were compelling reasons to grant SCJFS's motion for permanent custody.

{¶ 23} Father testified on his own behalf. As of the date of the hearing, Father had been living in Pennsylvania with his aunt for six months and his relationship with Mother was on and off. Father stated he has had long periods of sobriety but admitted he relapsed in October or November of 2021. He blamed the relapse on the fact that SCJFS had requested a six-month extension of temporary custody and claimed he never would have relapsed if S.P. had been returned to him and Mother within six months. Father also claimed the drug tests administered by SCJFS were inaccurate.

{¶ 24} Father also blamed his inconsistent employment on SCJFS stating he had to decline employment since the agency scheduled visits with S.P. in the middle of the week. He further stated SCJFS made no attempt to find services for him once he moved out of county. He stated he therefore engaged in two parenting programs on his own volition. Father testified that he felt no matter what he did, SCJFS planned to keep S.P.

{¶ 25} As to best interests, Hadden testified that parents visited S.P. regularly and the visits went well for the most part. She noted S.P. was bonded with her foster parents, but not Mother and Father. On one occasion parents brought developmentally inappropriate food to the visit. When the matter was discussed with them, parents became defensive. Hadden explored two potential kinship placements, only one of which was a possibility. S.P.'s foster family was willing to adopt S.P.

{¶ 26} Father testified he and Mother visited S.P. in Stark County at least 60 times requiring two hours of driving round trip. Father believed S.P. was bonded with he and

Mother, was aware of who her parents are, and that her best interests were served by being with he and Mother. Father added that if there was an issue with Mother's past that he would assume full responsibility for S.P.

{¶ 27} The GAL testified that parents had a lot of time, support, and options to get sober and to engage in counseling but have failed to take advantage of those opportunities. The GAL added that while parents complain SCJFS did not find a drug testing facility in Pennsylvania for them, parents had the opportunity to take a drug screen each time they visited S.P. but failed to do so. The GAL also opined uprooting S.P. who has special needs challenges and is non-verbal would be detrimental to her wellbeing. The GAL therefore felt granting SCJFS's motion for permanent custody was in S.P.'s best interests.

{¶ 28} After taking the matter under advisement, the trial court granted SCJFS's motion for permanent custody.

{¶ 29} Father filed an appeal and the matter is now before this court for consideration. He raises three assignments of error as follow:

I

{¶ 30} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO SUMMIT [SIC] COUNTY CHILDREN SERVICES AND DENIED FATHER'S MOTION FOR AN EXTENSION AS THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶ 31} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY NOT CONDUCTING THE ADJUDICATORY HEARING WITH [SIC] THE MANDATORY SIXTY DAYS."

III

{¶ 32} "THE TRIAL COURT'S DECISION TO GRANT PERMANENT CUSTODY OF THE CHILDREN TO STARK COUNTY JOB AND FAMILY SERVICES SHOULD BE REVERSED, BECAUSE THE AGENCY FAILED TO USE REASONABLE EFFORTS TO REUNIFY THE CHILDREN. [sic]"

I

{¶ 33} Under the first assignment of error, we must first note that despite its caption, there was no issue raised or argued by Father involving the denial of a motion for an extension of time.

{¶ 34} In his first assignment of error, father argues the trial court's decision to grant permanent custody to SCJFS is not supported by clear and convincing evidence and is against the manifest weight of the evidence. Specifically, Father argues the trial court erred in granting SCJFS's motion for permanent custody because S.P. had not been in SCJFS custody for 12 of the past 22 months. We disagree.

Manifest Weight

{¶ 35} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the

evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis sic.)

{¶ 36} In weighing the evidence however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

Permanent Custody Determination

{¶ 37} R.C. 2151.414(B)(1) states in relevant part that permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

> (a) The child is not abandoned or orphaned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> * * *
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

{¶ 38} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 39} R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. The section states in relevant part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the

parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(16) Any other factor the court considers relevant.

## Best Interests

{¶ 40} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

### Father's argument

{¶ 41} Father challenges only the trial court's finding that S.P. had been in the temporary custody of SCJFS for twelve or more months of a consecutive twenty-two-month period.

{¶ 42} For the purposes of the "twelve of twenty-two" determination contained in R.C. 2151.414(B)(1), the section states: "a child shall be considered to have entered the temporary custody of an agency on *the earlier* of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code *or* the date that is sixty days after the removal of the child from home." Emphasis added.

{¶ 43} SCJFS filed its dependency/neglect complaint on February 2, 2021. An emergency shelter care hearing took place and S.P. was placed into the temporary custody of SCJFS the same day. Sixty days from February 2, 2021 was April 3, 2021. SCJFS filed its motion requesting permanent custody on June 21, 2022, well in excess of 12 months. Accordingly, the trial court correctly found that S.P. had been in the

temporary custody of SCJFS for over twelve months of a consecutive 22-month period. See *In the Matter of D.V.* 5th Dist. Stark No. 2022CA00109, 2023-Ohio-238, ¶¶ 27-32.

{¶ 44} A finding that a child has been in the temporary custody of a public children-services agency for twelve months of a consecutive twenty-two-month period alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458 ¶ 45. Father does not challenge the trial court's best interests finding and in fact states there is no reason to examine the best interests finding. Father's brief at 16. We therefore find the trial court's decision is supported by clear and convincing evidence and is not against the manifest weight of the evidence.

{¶ 45} The first assignment of error is overruled.

II

{¶ 46} In his second assignment of error, Father argues his trial counsel rendered ineffective assistance by failing to object to the trial court holding the adjudicatory hearing outside of the 60-day time frame set forth in R.C. 2151.28. We disagree.

{¶ 47} The test for ineffective assistance of counsel used in criminal cases, announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), also applies in actions by the state to force the permanent, involuntary termination of parental rights. *Jones v. Lucas Cty. Children Services Bd.*, 46 Ohio App.3d 85, 86, 546 N.E.2d 471 (1988). A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the

appellant was prejudiced by counsel's ineffectiveness. *Strickland*, supra; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 48} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley* at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

{¶ 49} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." *State v. Carter*, 72 Ohio St.3d 545, 558, 1995-Ohio-104, citing *Lockhart v. Fretwell*, 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶ 50} Father faults his counsel for failing to object to the adjudication hearing being held on July 8, 2021 instead of on or before the deadline of June 29, 2021.

{¶ 51} We note Father did not appeal the adjudication of S.P. as a dependent child. As the Eighth District has found:

> "An adjudication by a juvenile court that a child is 'neglected' or 'dependent ' * * * followed by a disposition awarding temporary custody to a public children services agency * * * constitutes a 'final order' within the meaning of R.C. 2505.02 and is appealable to the

court of appeals * * *." *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990), syllabus. Furthermore, "an appeal of an adjudication order of abuse, dependency, or neglect of a child and the award of temporary custody to a children services agency pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A)." *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶ 18. Although the parent still retains the right to appeal any award of permanent custody to a children services agency, that appeal is limited to issues that arose *after* the adjudication order. *Id.*

{¶ 52} *In re S.C.*, 8th Dist. Cuyahoga No. 102611, 2015-Ohio-4766, ¶ 14, emphasis added.

{¶ 53} Because Father failed to file a timely appeal, we are without jurisdiction to consider the ineffective assistance of counsel issue he now raises. See *In the Matter of Blackburn*, Butler App. No. CA92-09-174, 1994 WL 18163 (Jan. 24, 1994) at *1.

{¶ 54} The second assignment of error is overruled.

III

{¶ 55} In his final assignment of error, Father argues the trial court's decision to grant permanent custody to SCJFS should be reversed because SCJFS failed to employ reasonable efforts to prevent the removal of S.P. We find Father's reasonable efforts argument inapplicable to the permanent custody hearing in this matter.

{¶ 56} In 2007, the Supreme Court of Ohio found:

[E]xcept for some narrowly defined statutory exceptions, the state must make reasonable efforts to reunify the family before terminating parental rights. If the agency has not already proven reasonable efforts, it must do so at the hearing on a motion for permanent custody. However, the specific requirement to make reasonable efforts that is set forth in R.C. 2151.419(A)(1) does not apply in an R.C. 2151.413 motion for permanent custody.

{¶ 57} *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 4.

{¶ 58} The Court in *C.F.* further stated "[i]f the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* at ¶ 43.

{¶ 59} According to the record in this matter the magistrate made reasonable efforts findings on six occasions prior to the permanent custody hearing, specifically, May 3, 2021, July 8, 2021, July 22, 2021, December 28, 2021, January 27, 2022, and June 28, 2022. The same finding was made on February 2, 2021 before the case was dismissed and refiled. Father never objected to any of the magistrate's seven findings of best efforts.

{¶ 60} Even if that were not true, at the permanent custody hearing, Hadden, the assigned SCJFS caseworker, testified that when she received the case plans were developed and approved with the goal of parents complying with the case plan to demonstrate they could safely parent and provide stability for S.P. Transcript of

permanent custody hearing (T.) 10-11. Among the biggest concerns was Father's drug use. While Father complied with the requirement of drug counseling while he was on probation, he failed to comply thereafter. T. 12. Instead of taking responsibility for his continued drug use, Father blamed SCJFS for his relapse and stated the agency failed to direct him to a facility where he could be drug screened in Pennsylvania. T. 87-88. But Father refused to comply with requests by SCJFS for drug screens on the many occasions he traveled to Stark County to visit S.P. T. 15-16, 86-87, 117. Father further failed to attend twelve-step meetings, identify a sober sponsor, or maintain employment and stable housing, all things Father could have accomplished no matter where he decided to live, and without any further prodding from SCJFS. 15-16, 117. In short, Father was provided with many opportunities and failed to take advantage of those opportunities.

{¶ 61} Because SCJFS was not required to make a reasonable efforts showing during the permanent custody hearing, and because Father never objected to seven previous findings by the court of reasonable efforts, the final assignment of error is overruled.

{¶ 62} The judgment of the Stark County Court of Common Pleas Family Court Division is affirmed.

By King, J.,

Gwin, P.J. and

Delaney, J. concur.

AJK/rw